People v Janvier (2020 NY Slip Op 04861)





People v Janvier


2020 NY Slip Op 04861


Decided on September 2, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 2, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
MARK C. DILLON
JOSEPH J. MALTESE
COLLEEN D. DUFFY
BETSY BARROS, JJ.


2014-09251
 (Ind. No. 2262/13)

[*1]The People of the State of New York, respondent,
v
Jean Janvier, appellant.


Paul Skip Laisure, New York, NY (Ava C. Page of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Rhea A. Grob, and Terrence F. Heller of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Miriam Cyrulnik, J.), rendered September 11, 2014, convicting him of assault in the second degree, assault in the third degree, and resisting arrest, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
On March 13, 2013, the defendant, allegedly operating an unlicensed vehicle for hire in Brooklyn, was pulled over by two inspectors from the New York City Taxi and Limousine Commission (hereinafter the TLC), who were peace officers (see CPL 2.10[27]), after they observed him change lanes without signaling. Upon being approached by the inspectors, the defendant attempted to drive away, but, after traveling a short distance, was subdued by his passenger. Upon stopping and exiting the vehicle, the defendant, while flailing his limbs and throwing punches and kicks into the air, knocked one of the inspectors to the ground, struck the other inspector in the eye, breaking the inspector's eyeglasses and, inter alia, fracturing the floor of his eye socket. The defendant was arrested and thereafter indicted on several charges, including assault in the second degree, assault in the third degree (two counts), resisting arrest, criminal mischief in the fourth degree, and menacing in the third degree. The defendant was convicted, after trial, of assault in the second degree, assault in the third degree, and resisting arrest, and sentenced to concurrent terms of imprisonment of one year on each count.
The defendant failed to preserve for appellate review his contention that his convictions of assault in the second degree and assault in the third degree were not supported by legally sufficient evidence (see CPL 470.05[2]). In any event, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt as to all convictions. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342, 348), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the [*2]record here, we are satisfied that the verdicts of guilt were not against the weight of the evidence (see People v Romero, 7 NY3d 633).
The defendant's contention that the evidence was insufficient to establish the authority of the inspectors to detain and arrest him is without merit. The evidence established that the inspectors were peace officers on "seizure patrol" at the time of their encounters with the defendant, wearing their TLC shields around their necks. TLC inspectors are peace officers (see CPL 1.20[33]; 2.10[27]). As peace officers, the inspectors possess, pursuant to statute, the authority to make arrests when there is reasonable cause to believe that an offense has been committed by a person in their presence (see CPL 2.20[1][a]; 140.25[1][a]). Peace officers are also within the statutorily defined class of persons under the protective umbrella of both assault in the second degree (see Penal Law § 120.05[3]; People v Coffaro, 52 NY2d 932, 934) and resisting arrest (see Penal Law § 205.30). Here, the evidence established that an arrest of the defendant occurred after the subject inspectors observed the defendant's vehicle change lanes without signaling and after the defendant struck one of the inspectors in the eye. To the extent the defendant relies on a purported "handbook" governing TLC inspectors, in support of his contention that the subject inspectors were not performing a lawful duty and not authorized to detain and arrest him, that material is dehors the record and may not be considered on direct appeal from the judgment (see People v Manzanales, 170 AD3d 752, 752; People v Wallace, 144 AD3d 775, 776).
The defendant's contention that he was deprived of the effective assistance of counsel is based, in part, on matter appearing on the record and, in part, on matter outside the record and, thus, constitutes a "mixed claim of ineffective assistance" (People v Maxwell, 89 AD3d 1108, 1109; see People v Evans, 16 NY3d 571, 575 n 2). Since the defendant's claim of ineffective assistance of counsel cannot be resolved without reference to matter outside the record, a CPL 440.10 proceeding is the appropriate forum for reviewing the claim in its entirety, and we decline to review the claim on this direct appeal (see People v Freeman, 93 AD3d 805, 806; People v Maxwell, 89 AD3d at 1109).
Although the defendant has completed serving his one-year sentence, the question of whether the sentence imposed should be reduced is not academic, because the sentence imposed has potential immigration consequences (see People v Juarez, 174 AD3d 822, 822; People v Bakayoko, 174 AD3d 730; People v Vega, 165 AD3d 984, 984).
The often-cited case from this Court of People v Suitte (90 AD2d 80) reminds us that appellate review of criminal sentences is of a "limited nature," (id. at 85), in recognizing that the "sentencing decision is a matter committed to the exercise of the [sentencing] court's discretion (id. [internal quotation marks omitted]," and that "[a] reviewing court lacks some of the first-hand knowledge of the case that the sentencing Judge is in a position to obtain, and therefore the sentencer's decision should be afforded high respect" (id.). Our role as intermediate appellate court justices is therefore not to examine a sentence as if we are acting de novo, and not to reduce a sentence if we might merely have been inclined to impose a more lenient sentence if we had been in the trial judge's chair. Therefore, this Court, in exercising our review of sentences, should generally avoid minor sentence modifications. By the same token, this Court's plenary authority to review sentences is an important responsibility to assure that sentences in given cases are not "unduly harsh or severe under the circumstances" (People v Delgado, 80 NY2d 780, 783) and to guard against potential sentencing disparities between counties (see People v Suitte, 90 AD2d at 85). CPL 470.15(3) assuredly confers upon the intermediate appellate court the authority to modify sentences in the exercise of discretion and in the interest of justice. The foregoing description of when, and whether, an appellate court should modify a sentence is consistent with the purpose and intent of the bellwether discussion found in People v Suitte.
Here, the defendant, in addition to being convicted of assault in the third degree and resisting arrest, both class A misdemeanors, was also convicted, as a first-time felony offender, of assault in the second degree, a class D felony (Penal Law § 120.05[3]). Thus, pursuant to Penal Law § 60.05(5), the Supreme Court was required to sentence the defendant in accordance with Penal Law [*3]§ 70.00. Pursuant to Penal Law § 70.00, the defendant was subject to a sentence of an indeterminate term of imprisonment of at least one year and no more than seven years (see Penal Law § 70.00[2][d]; [3]). However, the court did not sentence the defendant to an indeterminate term of imprisonment. Instead, the court, utilizing the alternative sentence procedure set forth in Penal Law § 70.00(4), imposed a sentence of a definite term of imprisonment of one year on each count, to run concurrently with each other and to be served in the New York City Department of Correction. As Penal Law § 70.00(4) provides for the imposition of an alternative sentence where the sentencing court "is of the opinion that a sentence of imprisonment is necessary but that it would be unduly harsh to impose an indeterminate or determinate sentence" of imprisonment, it is obvious that the court, in choosing to impose an alternative sentence, exhibited great leniency, despite the violent nature, circumstances, and permanent injuries of the crime. In other words, the sentence that is being reviewed on appeal was already the product of an act of leniency, when the court chose to impose a lesser, determinate sentence upon the defendant under the alternative sentence provisions of Penal Law § 70.04(4).
The defendant committed crimes against peace officers wearing their shields in the course of their duties. The defendant fled from the scene of the initial traffic stop, resulting in a chase. The defendant's conduct gave no regard to the safety of and the responsibility owed to the passenger in his vehicle at the time. At the scene of the second traffic stop, the defendant directed his assaultive conduct toward not one, but two, peace officers, resulting in the convictions for the class D felony of assault in the second degree (Penal Law § 120.05[3]) and assault in the third degree (Penal Law § 120.00[1]). The defendant's conduct was violent, and the injury inflicted upon TLC Inspector Khan was significant. The assault broke Khan's glasses, fractured his eye socket, caused lacerations to the cornea and eyelid, and embedded glass shards into the lacerations. Inspector Khan was caused to miss two months of work and sustain a permanent deterioration of vision from 20/25 acuity before the occurrence to 20/40 after it. The defendant was also convicted of the crime of resisting arrest (Penal Law § 205.30). The sentencing court considered the facts of the case and the appropriate factors at the time the sentence was imposed, including those favoring leniency, as well as defense counsel's specific request for a sentence of 364 days instead of one year (365 days).
The defendant's specific argument on appeal, that he had once experienced a carjacking in Haiti to explain his over-reactive conduct here, was among conflicting excuses proffered by the defendant during the sentencing proceeding. The defendant's uncorroborated claim of prior trauma is belied by the fact that he had been pulled over by a plainclothes TLC inspector on an earlier occasion, issued a summons, and had his car impounded, without incident at that time. The sentencing judge could have rightly concluded that the true reason for the defendant's flight, resistance, and assaultive behavior in this case was merely to avoid the TLC's seizure of his vehicle for a second time. On this record, even taking into specific consideration the potential immigration consequences of the jury's verdict and the court's sentence thereon, and recognizing that the trial judge has the best first-hand knowledge of the case and of the defendant, it cannot be said that the definite term of imprisonment of one year was unduly was harsh or excessive, or that any reduction of one day is warranted to further the interest of justice.
Further, our dissenting colleagues, who would reduce the defendant's sentence by one day to enable him to avoid the immigration consequences of his sentence, ignore prior precedent from this Court. Until now, our judicial department has reduced, as excessive, the sentences of similarly situated defendants by one day, in recognition of immigration-related consequences, when the defendants' underlying crimes were misdemeanors or were nonviolent toward other persons (see People v Cortez, 160 AD3d 893 [grand larceny in the second degree]; People v Scott, 156 AD3d 913 [violation of probation]; People v Aisewomhonio, 131 AD3d 1177 [violation of probation]; People v Bakare, 280 AD2d 679 [misdemeanor conviction]). We have rejected requests for one-day sentence reductions in cases with immigration consequences where the defendants used physical force or violence in the commission of their crimes against others (see People v Saveljevs, 180 AD3d 943 [attempted robbery in the third degree where defendant pushed complainant into a glass window during a storefront theft]; see also People v Diallo, 46 Misc 3d 62 [App Term 2d Dept, 2nd, 11th & 13th Jud Dists] [one-day sentence reduction denied where, inter alia, the underlying facts of a misdemeanor conviction were related to the assault of a police officer]).
Here, the defendant's conduct involved violence against two assault victims, so that a one-day sentence reduction would be an outlier measured against our existing precedents. In any event, to reduce the defendant's sentence by one day for the purpose of circumventing the normal application of U.S. immigration laws and procedures, in an appeal involving a) physical violence, b) against duly authorized peace officers, c) working in the line of duty, d) causing permanent physical injury to one of the officers, e) and inconsistent with this Court's prior precedents, builds a bridge that is too far for us to traverse.
Finally, our dissenting colleagues who favor a one-day sentence reduction note that the New York State Legislature recently amended Penal Law § 70.15. The amendment requires that one-year or 365-day definite sentences imposed on class A misdemeanor convictions be interpreted and applied as 364 days (see Penal Law 70.15[1-a]). The legislature's intent in enacting Penal Law § 70.15(1-a) was to help undocumented persons avoid deportation as a result of one-year or 365-day sentences on misdemeanor convictions (see William C. Donnino, Practice Commentary, McKinney's Cons Laws of NY, Penal Law § 70.15). Our colleagues' reference to this amendment, rather than supporting their position, actually undercuts the one-day sentence reduction that they would impose in this case involving a felony conviction. Under the well-recognized doctrine of expressio unius est exclusio alterius, where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted and excluded (see McKinney's Cons Laws of NY, Book 1, Statutes § 240; People v Buyund, 179 AD3d 161). The legislature clearly, and specifically, did not extend the ameliorative provisions of Penal Law § 70.15(1-a) to persons convicted of violent felonies, as here, or even to nonviolent felons, recognizing, as we should, that the commission of a felony requires a greater level of judicial circumspection.
For the foregoing reasons, we vote to affirm the judgment of conviction.
RIVERA, J.P., DILLON and MALTESE, JJ., concur.
BARROS, J. concurs in part and dissents in part, and votes to modify the judgment, as a matter of discretion in the interest of justice, by reducing the sentence imposed from definite concurrent terms of imprisonment of one year to definite concurrent terms of incarceration of 364 days; as so modified, to affirm the judgment, with the following memorandum, in which DUFFY, J., concurs:
The only issue that divides this panel is whether this Court, as a matter of discretion in the interest of justice, should reduce the defendant's sentence, which has already been served, by one day. Considering the facts and circumstances of the crime, the particular circumstances of the defendant, and the purposes of a penal sanction, i.e., societal protection, rehabilitation, and deterrence, the sentence should be reduced by one day so that this defendant, who has lived in the United States for more than 20 years and has no prior criminal history, will not suffer the unduly harsh and severe collateral immigration consequences of a mandatory deportation to Haiti and a permanent bar from the United States.
On March 13, 2013, the defendant, operating what the People allege was an unlicensed vehicle for hire in Brooklyn, was pulled over by two inspectors from the New York City Taxi and Limousine Commission (hereinafter the TLC) after they observed him change lanes without signaling. The inspectors wore TLC badges around their necks, but were otherwise dressed in plain clothes, and were operating an unmarked vehicle. Upon being approached by the subject inspectors, the defendant attempted to drive away. However, a passenger in the defendant's vehicle, who announced that he was a member of the United States Marine Corps, reached around the driver's seat and put the defendant in a chokehold. The passenger continued to choke the defendant while reaching for the defendant's car keys. The defendant bit the passenger's hand. The passenger then punched the defendant four times in the head. Upon stopping and exiting the vehicle, one of the inspectors grabbed the defendant, and the defendant flailed his limbs and threw punches and kicks. In so doing, the defendant struck an inspector causing a fracture to his eye socket.
The defendant was arrested and thereafter indicted on several charges, including assault in the second degree, assault in the third degree (two counts), resisting arrest, criminal mischief in the fourth degree, and menacing in the third degree. The defendant was convicted, after trial, of assault in the second degree, assault in the third degree, and resisting arrest, and sentenced to concurrent terms of imprisonment of one year on each count.
Although the defendant has served his sentence, the question of whether the sentence imposed should be reduced is not academic, because the sentence imposed has potential immigration consequences (see People v Juarez, 174 AD3d 822, 822; People v Bakayoko, 174 AD3d 730; People v Vega, 165 AD3d 984, 984). The defendant contends that the sentence of imprisonment of one year was unduly harsh or severe because, according to federal immigration law, such a sentence ensures the defendant's mandatory and permanent removal from the United States, and permanently bars him from returning to the United States. Given that he is currently 56 years old, has lived in the United States for more than 20 years, and has no prior criminal record, the defendant contends that his sentence should be reduced by one day in order to mitigate the severe immigration consequences to him.
Pursuant to federal immigration law, the defendant's conviction of assault in the second degree with the sentence of a definite term of imprisonment of one year constitutes an "aggravated felony," rendering him mandatorily deportable (8 USC § 1227[a][2][A][iii]). The term "aggravated felony" includes a crime of violence, i.e., an offense that has as an element the use of physical force against a person (see 18 USC § 16) for which the term of imprisonment is at least one year (see 8 USC § 1101[a][43][F]). Thus, if the defendant had received a sentence of concurrent terms of incarceration of 364 days, instead of one year, his conviction for assault in the second degree would not constitute an aggravated felony under federal immigration law.
"An intermediate appellate court has broad, plenary power to modify a sentence that is unduly harsh or severe under the circumstances, even though the sentence may be within the permissible statutory range" (People v Delgado, 80 NY2d 780, 783; see CPL 470.15[6][b]; People v Thompson, 60 NY2d 513, 519). "Our sentencing review power may be exercised, if the interest of justice warrants, without deference to the sentencing court'" (People v Kordish, 140 AD3d 981, 982, quoting People v Delgado, 80 NY2d at 783). "In considering whether a sentence is unduly harsh or severe under the circumstances, we exercise our discretion giving consideration to, among other things, the crime charged, the particular circumstances of the individual before the court and the purpose of a penal sanction, i.e., societal protection, rehabilitation, and deterrence'" (People v Kordish, 140 AD3d at 982-983, quoting People v Farrar, 52 NY2d 302, 305).
Here, in light of the unduly harsh collateral immigration consequences to the defendant, a reduction of the sentence by one day is warranted in the interest of justice. The defendant was 50 years old at the time the sentence was imposed, had resided in the United States for more than 15 years, and had no prior contact with the criminal justice system. The probation department's presentence investigation report (hereinafter PSR) and the defendant's own presentence memorandum, prepared by a licensed social worker, demonstrate that the defendant's criminal conduct was aberrational. Immediately before committing the subject assaults upon the TLC inspectors, the defendant was choked and struck four times in the head by the passenger. By all accounts, the defendant exited his vehicle flailing his limbs in a haphazard manner. Moreover, the PSR did not recommend a sentence of imprisonment.
Although the permissible statutory range of sentences included a period of imprisonment of an indeterminate term of one to seven years for the conviction of assault in the second degree (Penal Law § 120.05[3]; see Penal Law § 60.05[5]), it also authorized an alternative sentence of less than one year (see Penal Law § 70.00[4]). Considering that the defendant has already served his sentence, the reduction of the defendant's period of incarceration by a mere day does not undermine the penal interests of societal protection, rehabilitation, and deterrence. Indeed, since the defendant has completed his sentence, there can be no real concern that this Court is somehow minimizing the consequence to injuring a TLC inspector. Rather, the one-day sentence reduction serves to ameliorate only the unduly harsh immigration consequences to the defendant, [*4]including a mandatory deportation to Haiti and a permanent bar from the United States (see People v Bakayoko, 174 AD3d at 732; People v Cortez, 160 AD3d 893, 883; People v Aisewomhonio, 131 AD3d 1177, 1178; People v Weston, 98 AD3d 1066; People v Bakare, 280 AD2d 679; People v Cuaran, 261 AD2d 169).
CPL 470.15(6)(b) governs the sentencing review authority of intermediate appellate courts and sets forth the sole criteria by which we, as an intermediate appellate court, can determine whether to modify a sentence in the interest of justice as a matter of discretion: "[t]hat a sentence, though legal, was unduly harsh or severe." In People v Suitte (90 AD2d 80, 86), this Court pointed out that the legislature empowered appellate courts to modify sentences and to "substitute our own discretion" for that of a sentencing court even where that court "has not abused its discretion" in imposing sentence. In 1992, the Court of Appeals reaffirmed the principle that this Court's sentencing review power may be exercised without deference to the sentencing court (see People v Delgado, 80 NY2d at 783; see also People v Kordish, 140 AD3d at 983), and, in recent years, this Court has reiterated the nature of our role in sentencing determinations as set forth in People v Delgado (see People v Murdock, 175 AD3d 1560, 1562; People v Garcia, 170 AD3d 883, 886; People v Farrell, 169 AD3d 919, 920; People v Diaz, 146 AD3d 803, 805; People v Kordish, 140 AD3d 981).
Thus, in determining whether to reduce a sentence pursuant to CPL 470.15(6)(b), this Court need not defer to the sentencing court merely because it has observed the principles of sentencing; rather, this Court must make its own determination as to whether the sentence imposed was unduly harsh or severe (see People v Farrar, 52 NY2d at 305; People v Kordish, 140 AD3d at 982-983). Thus, contrary to the concern raised by our colleagues, the exercise of this Court's sentencing review power, even where it results in a slight modification of a sentence, does not mean that this Court is supplanting the sentencing court's role to impose a sentence in the first instance. Exercise of this Court's sentencing review power allows the Appellate Division to ameliorate the negative consequences of an unduly harsh or severe sentence, and to "rectify sentencing disparities, reach extraordinary situations, and effectively set sentencing policy through the development of sentencing criteria" (People v Suitte, 90 AD2d at 86).
We also note that People v Suitte emphasized the importance of recognizing the legislature's role in crafting a sentencing scheme to determine "which ills of society require criminal sanctions" (id. at 83). To that end, we note that this past year, the legislature acknowledged the severe collateral consequences of immigration detention, denial of immigration relief, and deportation such that it enacted legislation, with retroactive effect, at least with respect to misdemeanor convictions, reducing the imposition of one-year sentences to sentences of 364 days (see Penal Law § 70.15 [1-a][b]). The legislature noted that the collateral immigration consequences are extraordinarily harsh and disproportionate to such convictions (see Mem in Support, NYLS Bill Jacket Supp 2019, ch 55, part OO at 18). Although these legislative amendments focus on misdemeanor convictions, the legislature's express concern about negative and disproportionate collateral consequences in relation to the crime committed is an appropriate consideration for sentencing and for this Court's exercise of its interest of justice review.
ENTER:
Aprilanne Agostino
Clerk of the Court