11-5155-pr
*Rivera v. United States*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2012

(Argued:  November 27, 2012    Decided:  May 24, 2013)

Docket No. 11-5155-pr

————————————————

JOHN RIVERA AKA HUBERT COLEMAN,

*Petitioner-Appellant*,

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

————————————————

Before:

SACK, CHIN, and LOHIER, *Circuit Judges.*

————————————————

Appeal from a Memorandum and Order of the United States District Court for the Eastern District of New York (Glasser, *J.*) denying petitioner-appellant's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or modify his sentence.

AFFIRMED.

KEVIN J. KEATING, (Matthew W. Brissenden, *on the brief*), Law Offices of Kevin J. Keating, Garden City, New York, *for Petitioner-Appellant.*

UNA A. DEAN, Assistant United States Attorney (Emily Berger, Assistant United States Attorney, *on the brief*), *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, New York, *for Respondent-Appellee.*

CHIN, *Circuit Judge*:

On June 14, 2005, after pleading guilty to possession of a firearm after having been convicted of a felony, petitioner-appellant John Rivera was sentenced pursuant to the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e), to a mandatory minimum term of imprisonment of fifteen years. Rivera filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, arguing that changes in state law that lowered the maximum sentence applicable to a prior state court conviction rendered him no longer subject to sentencing under ACCA. The district court (Glasser, *J.*) denied the motion. We affirm.

**BACKGROUND**

**1. *The Felony Possession Offense***

On March 6, 2004, as New York City police officers were investigating a matter in Brooklyn, New York, they saw Rivera standing in front of a bodega. As the officers approached, Rivera fled.

The officers gave chase. They apprehended Rivera and found on his person a .38-caliber revolver with its serial number obliterated. The gun had no cylinder -- the chamber that holds the bullets -- and was therefore inoperable. Rivera claimed that he had found the gun in a nearby park. The officers detained him and eventually transferred Rivera to federal custody.

The government charged Rivera with possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).[1] He signed a plea agreement, in which he waived his right to appeal a sentence of 235 months' imprisonment or less. The

_____

[1] The Indictment also charged Rivera with the knowing and intentional possession of a firearm shipped and transported in interstate commerce in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). This count was later dismissed.

Probation Department calculated a sentencing range of 151-188 months' imprisonment under the United States Sentencing Guidelines (the "Guidelines"), based on an adjusted offense level of 30 and a criminal history category of V.

Rivera, however, had three prior state court convictions in 2000 and 2001: (1) robbery, (2) attempted criminal sale of a controlled substance, and (3) attempted assault. On the basis of these convictions, Rivera was subject to a sentencing enhancement under ACCA as an "armed career criminal." ACCA imposed a mandatory minimum term of imprisonment of fifteen years -- 180 months' imprisonment. 18 U.S.C. § 924(e).

On June 14, 2005, Rivera was sentenced principally to fifteen years' imprisonment -- for possession of an inoperable gun.

## 2. *Rivera's Drug Conviction*

One of the state court convictions that resulted in Rivera's sentencing enhancement pursuant to ACCA was an October 2000 conviction for attempted criminal sale of a controlled substance in the third degree, in violation of New York State Penal Law §§ 110 and 220.39. This was a

class C felony, subject at the time to a maximum term of imprisonment of fifteen years. Rivera received a one-year term of imprisonment.

In 2004, the New York State legislature enacted sentencing reforms that, in part, reduced the maximum terms of imprisonment applicable to non-violent drug-related offenses. *See generally* N.Y. State Assembly Mem. in Supp. of Legislation, *reprinted in* Bill Jacket, 2004 A.B. 11895, ch. 738 [hereinafter "NYS Assembly Memo"]. In 2009, the state enacted additional laws, further reducing drug-related sentences. *See* 2009 N.Y. Laws ch. 56, pt. AAA.[2]

## 3. *Procedural History*

Rivera did not directly appeal his sentence. In 2011, however, Rivera filed this motion below pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The district court denied the motion. Rivera appealed, and the district court granted a certificate of appealability as to whether Rivera's drug conviction still

---

[2] The New York State legislature also enacted additional sentencing reforms in 2005. *See* 2005 N.Y. Laws ch. 642. None of Rivera's arguments on appeal relate to the reforms implemented by that legislation.

qualified as a predicate felony for the ACCA sentencing enhancement in light of recent U.S. Supreme Court precedent.

### *DISCUSSION*

Rivera argues that drug reform laws enacted by the New York State legislature provide retroactive sentencing relief and are therefore beyond the scope of the holding in *McNeill v. United States*, 131 S. Ct. 2218 (2011). We disagree because, as the relevant New York laws apply prospectively, the precedent established in *McNeill* governs this appeal.[3]

---

[3] The government contends that Rivera is barred from bringing this appeal because (1) he agreed not to collaterally attack a sentence of less than 235 months, and (2) notwithstanding his waiver, his 2255 motion was not filed within the one-year limitations period. *See* 28 U.S.C. § 2255(f). Rivera, on the other hand, asserts that he is actually innocent of being a career criminal, and that we may therefore consider this appeal. *See Schlup v. Delo*, 513 U.S. 298, 314-15 (1995) (actual innocence can serve as a "gateway" by which courts may hear procedurally defaulted constitutional claims on the merits); *Rivas v. Fischer*, 687 F.3d 514, 539, 552 (2d Cir. 2012) (compelling showing of actual innocence can overcome a time-barred motion). We acknowledge that whether Rivera could be deemed "actually innocent" of the ACCA sentencing enhancement is unclear. *See Darby v. United States*, No. 11-4828, 2013 WL 309986, at *2 (2d Cir. Jan. 28, 2013) (summary order) (noting in the context of a career offender enhancement under the Guidelines that "we by no means suggested that the actual innocence exception applies where, as here, the defendant was indisputably guilty of the predicate offenses that led to his

1.   *Applicable Law*

a.   *Standard of Review*

We review *de novo* the legal conclusions underlying a district court's denial of a motion for relief under 28 U.S.C. § 2255.  *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012); *Ventry v. United States*, 539 F.3d 102, 110 (2d Cir. 2008).  We will defer, however, to a district court's findings of fact unless they are clearly erroneous. *Sapia v. United States*, 433 F.3d 212, 216 (2d Cir. 2005).

b.   *Drug Law Reform Acts*

Beginning in 2004, the New York State legislature enacted a series of laws to curb the harsh penalties imposed by what had become known as the Rockefeller drug laws -- a sentencing scheme signed into law by Governor Nelson Rockefeller in the 1970s.  Noting that those laws "provide[d] inordinately harsh punishment for low level non-violent drug offenders," the Rockefeller Drug Law Reform Act ("2004 DLRA") sought to "reform the sentencing structure of New York's drug laws to reduce prison terms

_____

enhancement").  In light of our disposition below, however, we assume without deciding that Rivera may bring this appeal.

-7-

for non-violent drug offenders, provide retroactive sentencing relief and make related drug law sentencing improvements."  NYS Assembly Memo at 3, 6; *see also People v. Acevedo*, 14 N.Y.3d 828, 831 (2010).

In relevant part, the 2004 DLRA reduced sentences for non-violent drug offenders, including those who had committed class C felonies.  *See* NYS Assembly Memo at 4. *Compare* 2004 N.Y. Laws ch. 738, § 36 ("[F]or a class C felony, the term shall be at least three and one-half years and shall not exceed nine years.") (codified at N.Y. Penal Law § 70.70(4)(b)(ii) (2005)), *with* N.Y. Penal Law § 70.00(2)(c) (2000) ("For a class C felony, the term shall be fixed by the court and shall not exceed fifteen years.").  The 2004 DLRA also provided resentencing opportunities, but only to persons convicted of more serious crimes.  *See* 2004 N.Y. Laws ch. 738, § 23 (not codified but allowing resentencing of class A-1 felons); *see also* NYS Assembly Memo at 4-6.  Finally, eligible offenders could earn "merit time" for completing certain programs, which would reduce the length of incarceration.

NYS Assembly Memo at 4, 6; *see also* 2004 N.Y. Laws ch. 738, § 30 (not codified).

Subsequent legislation, the Drug Law Reform Act of 2009 (the "2009 DLRA"), further reduced penalties for drug-related offenses by allowing resentencing for felons convicted of class B felony drug offenses.[4]  2009 N.Y. Laws ch. 56, pt. AAA, § 9 (codified at N.Y. Crim. Proc. § 440.46); *People v. Santiago*, 17 N.Y.3d 246, 247-48 (2011).  Individuals convicted solely of class C felonies, however, were ineligible for this relief.  *See* 2009 N.Y. Laws ch. 56, pt. AAA, § 9.

c.   *ACCA Sentencing Enhancement*

Federal law criminalizes the possession of a firearm by a felon.  18 U.S.C. § 922(g).  When a felon "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one other," felony possession is penalized by at least fifteen years' imprisonment.  *Id.* § 924(e)(1).

---

[4]     It is unclear whether these reductions extend to non-incarcerated class B felons.  *See* 2011 N.Y. Laws ch. 62, pt. C, subpart B, § 79.  This remains an open issue in the New York Court of Appeals.  *See, e.g.*, *People v. Santiago*, 17 N.Y.3d 246, 248 n.* (2011); *People v. Paulin*, 17 N.Y.3d 238, 243 n.* (2011).

As relevant here, a "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of *ten years* or more is prescribed by law." *Id.* § 924(e)(2)(A)(ii) (emphasis added).

Whether a prior conviction qualifies as a predicate felony for the ACCA sentencing enhancement is determined by looking to state law existing at the time of that conviction. *See McNeill*, 131 S. Ct. at 2224 (serious drug offenses); *James v. United States*, 550 U.S. 192, 197 (2007) (violent felonies). For example, a drug offense is only a "serious drug offense" under ACCA if the "'maximum term of imprisonment' applicable to a defendant's previous drug offense" was ten years or more when he was convicted for that offense. *McNeill*, 131 S. Ct. at 2224; *see also United States v. Thurman*, No. 12-3767, 2013 WL 1924789, *4 (6th Cir. May 9, 2013) (unpublished opinion); *United States v. Ellis*, 473 F. App'x 490, 493 (6th Cir. 2012); *United States v. Conyers*, 457 F. App'x 229, 230 (4th Cir. 2011)

-10-

(unpublished per curiam); *cf. United States v. Turlington*, 696 F.3d 425, 427-28 (3d Cir. 2012) (applying *McNeill*'s reasoning to hold that sentences for violating supervised release should be determined by reference to applicable law when convicted for underlying offense).

## 2. *Application*

Rivera's appeal fails. In *McNeill*, the Supreme Court held that predicate drug-related felonies are determined by reference to the "'maximum term of imprisonment' applicable to a defendant's previous drug offense *at the time of the defendant's state conviction* for that offense." 131 S. Ct. at 2224, 2223 (emphasis added) (rejecting premise that "subsequent changes in state law can erase an earlier conviction for ACCA purposes"). The state sentencing scheme considered by the Court in *McNeill*, however, applied only prospectively, *see* N.C. Gen. Stat. Ann. §§ 15A-1340.17(c) & (d), 90-95(a)(1) & (b)(1) (2009); *McNeill*, 131 S. Ct. at 2221, and in a footnote, the Supreme Court limited its holding to similarly non-retroactive statutory schemes. Specifically, the Supreme Court noted that *McNeill* did "not concern a situation in which a State

-11-

subsequently lowers the maximum penalty applicable to an offense and makes that reduction available to defendants previously convicted and sentenced for that offense." *McNeill*, 131 S. Ct. at 2224 n.1 (declining to "address whether or under what circumstances a federal court could consider the effect of that state action").

With this appeal, based in part on that footnote in *McNeill*, Rivera tries -- and fails -- to bring the 2004 and 2009 DLRAs outside the scope of *McNeill*. Like the law before the Supreme Court, these laws are non-retroactive -- and therefore governed by *McNeill*.

First, although the 2004 DLRA reduced to nine years the maximum sentence applicable to class C offenses, *see* 2004 N.Y. Laws ch. 738, § 36 (codified at N.Y. Penal Law § 70.70(4)(b)(ii) (2005)), the change applied only "to crimes committed on or after the effective date [of the 2004 DLRA]." 2004 N.Y. Laws ch. 738, § 41(d-1); *see also People v. Utsey*, 7 N.Y.3d 398, 404 (2006) ("Under the plain language of the statute, the relevant provisions of the [2004] DLRA are intended to apply only to crimes committed after its effective date."). Rivera was sentenced for the

underlying drug offense on October 5, 2000, long before the 2004 reforms became effective. Hence, the nine-year statutory maximum was simply not the "maximum sentence applicable" to his 2000 drug conviction. *See Utsey*, 7 N.Y.3d at 402-03.

Second, to the extent the 2004 DLRA provided resentencing opportunities, these were limited to individuals who had committed class A-1 offenses. 2004 N.Y. Laws ch. 738, § 23 (not codified). As Rivera committed a class C offense, he was ineligible for this relief.

Third, although "merit time" allowances could reduce a defendant's sentence under the 2004 amendments, these allowances were by no means guaranteed. *See* 2004 N.Y. Laws ch. 738, § 30(1)-(2). With good behavior during incarceration and by successfully completing certain programs, an individual could procure "merit time" as a credit against the sentence imposed by the court. *Id.* These allowances might reduce a defendant's sentence over time, but could not possibly change the "maximum sentence applicable" -- *i.e.*, his *sentencing exposure* at the time of

-13-

his state law conviction -- which, under *McNeill*, is the only relevant point of reference.  In any case, no mechanism in the 2004 DLRA provided for altering the sentence of individuals who, like Rivera, were not incarcerated when the 2004 DLRA became effective.  *Cf. People v. Mills*, 11 N.Y.3d 527, 537 (2008) (noting that "[s]urely the Legislature did not intend fresh crimes to trigger resentencing opportunities," when it rejected the argument that a defendant who violated parole could be resentenced for the underlying offense under similar statutory reforms enacted in 2005).

Turning to the 2009 DLRA, we reach a similar conclusion.  While some provisions of the 2009 DLRA apply retroactively, they do not apply where, as here, a defendant has already been sentenced.  *See* 2009 N.Y. Laws ch. 56, pt. AAA § 33(f) (uncodified) (effective April 7, 2009).  Likewise, as Rivera conceded, the "expanded opportunities for resentencing" provided by the 2009 DLRA did not apply to a person whose sole drug-related offense was a class C felony.  2009 N.Y. Laws ch. 56, pt. AAA, § 9.

-14-

Viewed collectively, the New York sentencing schemes mirror those addressed in *McNeill* because their provisions do not retroactively change the maximum sentence applicable to Rivera's drug conviction.

Rivera relies heavily on our decision in *United States v. Darden*, 539 F.3d 116 (2d Cir. 2008), in which we held that predicate felonies under ACCA are determined by reference to the maximum state sentence in effect for the prior state law conviction when the defendant is sentenced for the federal offense. 539 F.3d at 127-28. This reliance, however, is misplaced. As the district court properly concluded, *McNeill* abrogated *Darden*. *See Rivera v. United States*, No. 11-cv-969, 2011 WL 5858089, at *2 (E.D.N.Y. Nov. 15, 2011) (acknowledging abrogation); *see also Abney v. Augustine*, No. 5:12-cv-19, 2012 WL 5199602, at *2 (N.D. Fla. June 11, 2012) (same). We agree.

Rivera argues that the "retroactive aspects" of the 2004 and 2009 DLRAs "place New York outside the ambit of the *McNeill* decision." Appellant's Br. 13. As those retroactive aspects do not apply here and do not reduce the "maximum sentence applicable" to Rivera's prior drug

-15-

conviction, we conclude that *McNeill* applies squarely to this case.

Applying *McNeill*, we hold that Rivera's prior drug conviction counts as a predicate "serious drug offense" under ACCA. We refer, as we must, to the fifteen-year maximum term of imprisonment applicable to Rivera's state law drug offense in 2000, the time he was convicted for that offense. *See McNeill*, 131 S. Ct. at 2224. Coupled with the pair of violent felonies (robbery and attempted assault), Rivera's criminal record included three ACCA predicate felonies. Thus, the district court did not err by imposing the sentencing enhancement and, therefore, properly denied Rivera's motion for relief under 28 U.S.C. § 2255. *See Rivera*, 2011 WL 5858089, at *3.

### *CONCLUSION*

Accordingly, we AFFIRM the district court's denial of Rivera's motion under 28 U.S.C. § 2255.