**18-3667**
*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————

August Term 2020

(Submitted: August 11, 2021 | Decided: August 26, 2021)

Docket No. 18-3667

ARKANSAS TEACHER RETIREMENT SYSTEM, WEST VIRGINIA
INVESTMENT MANAGEMENT BOARD, PLUMBERS AND PIPEFITTERS
PENSION GROUP,

*Plaintiffs-Appellees,*

v.

GOLDMAN SACHS GROUP, INC., LLOYD C. BLANKFEIN, DAVID A.
VINIAR, GARY D. COHN,

*Defendants-Appellants.*[†]

————————

Before:

WESLEY, CHIN, and SULLIVAN, *Circuit Judges.*

Plaintiffs-Appellees, shareholders of Goldman Sachs Group, Inc., brought this class action lawsuit against Goldman Sachs and several of its former executives (collectively, "Goldman") alleging that Goldman committed securities fraud by misrepresenting its conflicts-of-interest policies and practices. In 2015, the district court certified a class of shareholders under Federal Rule of Civil Procedure 23(b)(3). We vacated and remanded, holding that the district court failed to apply the preponderance-of-the-evidence standard in deciding whether

---

[†] The Clerk of the Court is respectfully directed to amend the caption as set forth above.

Goldman rebutted the "*Basic* presumption," which presumes that the shareholders relied on Goldman's public misrepresentations when they purchased its stock at market price. In 2018, the district court again certified the class, and we affirmed, rejecting Goldman's arguments that the district court failed to apply the correct legal standard or that it otherwise abused its discretion. The Supreme Court vacated and remanded because it was uncertain that we properly considered the generic nature of Goldman's alleged misrepresentations in reviewing the district court's decision. Because it is unclear whether the district court considered the generic nature of Goldman's alleged misrepresentations in its evaluation of the evidence relevant to price impact and in light of the Supreme Court's clarifications of the legal standard, we **VACATE** the class certification order of the district court and **REMAND** for further proceedings consistent with this opinion.

––––––––––––––––––

ROBERT J. GIUFFRA, JR., Sullivan & Cromwell LLP, New York, NY (Richard H. Klapper, David M.J. Rein, Benjamin R. Walker, Julia A. Malkina, Jacob E. Cohen, Sullivan & Cromwell LLP, New York, NY; Kannon K. Shanmugam, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC, *on the brief*), *for Defendants-Appellants*.

THOMAS C. GOLDSTEIN, Goldstein & Russell, P.C., Bethesda, MD (Kevin K. Russell, Goldstein & Russell, P.C., Bethesda, MD; Spencer A. Burkholz, Joseph D. Daley, Robbins Geller Rudman & Dowd LLP, San Diego, CA; Thomas A. Dubbs, James W. Johnson, Michael H. Rogers, Irina Vasilchenko, Labaton Sucharow LLP, New York, NY, *on the brief*), *for Plaintiffs-Appellees*.

––––––––––––––––––

PER CURIAM:

Plaintiffs-Appellees (hereinafter, "Plaintiffs"), shareholders of Goldman Sachs Group, Inc., brought this class action lawsuit against Goldman Sachs and several of its former executives (collectively, "Goldman") alleging that Goldman

2

committed securities fraud by misrepresenting its conflict-of-interest policies and practices. The facts and procedural history, which we reference here only as necessary to explain our decision, are detailed in our previous opinions. *See, e.g.*, *Ark. Tchrs. Ret. Sys. v. Goldman Sachs Grp., Inc.* ("*ATRS I*"), 879 F.3d 474, 478 (2d Cir. 2018).

## BACKGROUND

In 2018,[1] the United States District Court for the Southern District of New York (Crotty, *J.*) granted Plaintiffs' motion to certify a class of shareholders under Federal Rule of Civil Procedure 23(b)(3). *See In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10 CIV. 3461 (PAC), 2018 WL 3854757, at \*6 (S.D.N.Y. Aug. 14, 2018), *aff'd sub nom. Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, ("*ATRS II*"), 955 F.3d 254 (2d Cir. 2020), *vacated and remanded*, 141 S. Ct. 1951 (2021). To recover damages, Plaintiffs "must prove, among other things, a material misrepresentation or omission by [Goldman] and [Plaintiffs'] reliance on that misrepresentation or omission." *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1958

---

[1] The district court previously certified a class in 2015, *see In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10 CIV. 3461 PAC, 2015 WL 5613150, at \*8 (S.D.N.Y. Sept. 24, 2015), which we vacated and remanded upon finding that it was unclear whether the district court had applied the preponderance-of-the-evidence standard in determining whether Goldman rebutted the *Basic* presumption, *see ATRS I*, 879 F.3d at 486.

3

(2021).  Plaintiffs invoked the *Basic* presumption, a rebuttable presumption that all shareholders had relied on Goldman's public misrepresentations when they purchased its stock, premised on the theory that investors rely on all of a company's public misrepresentations when trading stock in an efficient market. *See Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988).  By allowing courts to infer reliance on a classwide basis, the *Basic* presumption helps plaintiffs in securities class actions to satisfy Rule 23(b)(3)'s requirement that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).

As Goldman acknowledged, Plaintiffs met their burden of proving the elements of the *Basic* presumption required for class certification: that Goldman's alleged "misstatements were publicly known, [its] shares traded in an efficient market, and [Plaintiffs] purchased the shares at the market price after the misstatements were made but before the truth was revealed."[2]  *ATRS I*, 879 F.3d at 481, 484.  However, the *Basic* presumption is not insuperable.  A defendant may

---

[2] The *Basic* presumption also requires the alleged misrepresentation to be "material."  *See Goldman*, 141 S. Ct. at 1958.  However, plaintiffs do not need to prove materiality before class certification.  *See id.* at 1959 ("[M]ateriality should be left to the merits stage because it does not bear on Rule 23's predominance requirement.").

rebut the *Basic* presumption by making "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price." *Basic*, 485 U.S. at 248. If a defendant can establish that the alleged misrepresentation "did not actually affect the market price of the stock"—*i.e.*, that it had no "price impact"—"then *Basic*'s fundamental premise 'completely collapses, rendering class certification inappropriate.'" *Goldman*, 141 S. Ct. at 1959 (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 283–84 (2014)).

Plaintiffs brought this action under the inflation-maintenance theory. They allege that Goldman's statements regarding its conflicts-of-interest policies and practices in SEC filings and annual reports between 2006 and 2010, such as "[w]e have extensive procedures and controls that are designed to identify and address conflicts of interest," J.A. 88, and "[w]e are dedicated to complying fully with the letter and spirit of the laws," J.A. 93, were misleading because Goldman had pursued conflicted transactions during that period. Plaintiffs argue the statements maintained an already-inflated stock price "by preventing preexisting inflation from dissipating from the stock price," and once the truth about Goldman's conflicts was revealed in government enforcement actions and news reports (the

"corrective disclosures"), "the inflation in Goldman's stock price dissipated, causing the price to drop and shareholders to suffer losses." *Goldman*, 141 S. Ct. at 1959–60 (citation omitted).

In the inflation-maintenance context, "price impact is the amount of price inflation maintained by an alleged misrepresentation—in other words, the amount that the stock's price would have fallen 'without the false statement.'" *Id.* at 1961 (quoting *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 415 (7th Cir. 2015)); *see also In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016) ("[T]he proper question for purposes of our inquiry into price impact is not what might have happened had a company remained silent, but what would have happened if it had spoken *truthfully*.").[3]

Goldman submitted evidence to show that its alleged misrepresentations had no price impact. It introduced expert testimony from Dr. Paul Gompers, who

---

[3] Although *Glickenhaus*, the Seventh Circuit case quoted by the Supreme Court, facially appears to conflict with our holding in *Vivendi*, *Glickenhaus* also explains that price inflation is measured by what would have happened if the defendant had told the truth. *See Glickenhaus*, 787 F.3d at 415 ("The best way to determine the impact of a false statement is to observe what happens when the truth is finally disclosed and use that to work backward, on the assumption that the lie's positive effect on the share price is equal to the additive inverse of the truth's negative effect."). The Supreme Court also stated that it "need not and do[es] not" express its views on the "validity or . . . contours" of the inflation-maintenance theory. *Goldman*, 141 S. Ct. at 1959 n.1. *Vivendi*'s articulation of price impact in the inflation-maintenance context thus remains the law of this Circuit.

6

argued that the lack of movement in Goldman's stock price in response to news articles regarding Goldman's conflicts published on 36 dates prior to the corrective disclosures showed that the alleged misrepresentations had no price impact, and Dr. Stephen Choi, who suggested the price drops following the corrective disclosures were due to news of enforcement activities rather than Goldman's conflicts. It also submitted a report from Dr. Laura Starks, who concluded that Goldman's statements would not have influenced investors because of their generic nature. Plaintiffs' expert Dr. John D. Finnerty challenged the methodologies and findings of Goldman's experts.

The district court concluded that Goldman failed to establish by a preponderance of the evidence that its alleged misrepresentations had no price impact. *See In re Goldman*, 2018 WL 3854757, at *6. It found Dr. Gompers's arguments unpersuasive, determining that "[t]he first corrective disclosure included new material information that had not been described in any of the 36 more generic reports on conflicts." *Id*. at *4. It also rejected Dr. Choi's findings as unreliable and credited Dr. Finnerty's criticisms of Dr. Choi's methodologies. *See id*. at *5–6. The court granted Plaintiffs' motion for class certification. *See id*. at *6.

On a Rule 23(f) appeal,[4] we affirmed the district court's order certifying the class. *See ATRS II*, 955 F.3d at 275. Goldman principally contended that the district court erred in applying the inflation-maintenance theory, arguing that "general statements, like those challenged here, are incapable of impacting a company's stock price as a matter of law." Goldman's Br. at 46. It also argued that the court misconstrued its evidence and misapplied the preponderance of the evidence standard. We rejected Goldman's request to narrow the inflation-maintenance theory, holding that its proposal to exclude general statements as a matter of law too closely resembled the materiality inquiry, which is inappropriate at the class certification stage. *See ATRS II*, 955 F.3d at 267. We also concluded that the district court did not clearly err in its evaluation of the evidence and that it correctly applied the preponderance of the evidence standard. *See id.* at 271–74.[5]

The Supreme Court vacated our judgment and remanded for further

---

[4] Rule 23(f) provides that "[a] court of appeals may permit an appeal from an order granting or denying class-action certification under [Rule 23]." Fed. R. Civ. P. 23(f).

[5] Judge Sullivan dissented, explaining that he would reverse the district court's finding because in his view, "the generic quality of Goldman's alleged misstatements, coupled with the undisputed fact that Goldman's stock price did not move on any of the 36 dates on which the falsity of the alleged misstatements was revealed to the public, clearly compels the conclusion that the stock drop following the corrective disclosures was attributable to something *other* than the misstatements alleged in the complaint." *See ATRS II*, 955 F.3d at 278–79 (Sullivan, J., dissenting) (internal quotation marks and citation omitted).

8

proceedings consistent with its opinion. *See Goldman*, 141 S. Ct. at 1963. The Court determined that "it is unclear whether [this Circuit] properly considered the generic nature of Goldman's alleged misrepresentations in reviewing the [d]istrict [c]ourt's price impact determination," *id.*, and instructed that on remand we "take into account *all* record evidence relevant to price impact, regardless whether that evidence overlaps with materiality or any other merits issue," *id.* at 1961. The parties subsequently submitted supplemental briefing summarizing all evidence in the record relating to the price impact of the corrective disclosures, including the generic nature of Goldman's alleged misrepresentations.

## DISCUSSION

The Supreme Court's decision instructs us to reassess the district court's price impact determination, upon which the court's class certification order rests. "We review a district court's grant of class certification for abuse of discretion," *Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 464 (2d Cir. 2013), reviewing *de novo* "the conclusions of law underlying that decision" and "for clear error the factual findings underlying" its ruling, such as the court's price impact determination, *id.* (quoting *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201 (2d Cir. 2008)). "Under the clear error standard, we may not reverse [a finding] even though convinced that had [we] been sitting as the trier of fact, [we]

9

would have weighed the evidence differently. Rather, a finding is clearly erroneous only if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Atl. Specialty Ins. Co. v. Coastal Env't Grp. Inc.*, 945 F.3d 53, 63 (2d Cir. 2019) (alterations in original) (internal quotation marks and citations omitted).

In its petition for certiorari, Goldman abandoned its argument before us that the inflation-maintenance theory should not apply to generic statements as a matter of law. *See* Petition for Writ of Certiorari, *Goldman*, 141 S. Ct. 1951 (No. 20-222). Instead, it argued that the generic nature of the statements is relevant to the price impact inquiry regardless of the overlap with materiality. *See id.* at 3. Plaintiffs ultimately agreed the generic nature is relevant, and by the time of the Supreme Court's decision, the parties "disagree[d] only about whether [this Circuit] properly considered the generic nature of Goldman's alleged misrepresentations." *Goldman*, 141 S. Ct. at 1961. Because the Court was left with "sufficient doubt on this score," it remanded for us to take into account "*all* record evidence relevant to price impact," including the generic nature of Goldman's

10

statements.[6] *Id.*

It is "our general policy that the trial court should consider arguments—and weigh relevant evidence—in the first instance." *Florez v. Cent. Intel. Agency*, 829 F.3d 178, 189 (2d Cir. 2016). The district court's decision granting class certification did not discuss the generic nature of Goldman's alleged misrepresentations in its evaluation of the evidence relevant to price impact. Nor did it discuss Dr. Starks's expert report, which focused on the generic nature of Goldman's statements, or Dr. Finnerty's rebuttal to Dr. Starks's arguments. *See generally In re Goldman*, 2018 WL 3854757. The parties' supplemental briefs confirm that their arguments before us raise fact-intensive issues better evaluated by the district court in the first instance.

The Supreme Court's clarifications of the legal standard further support our decision to vacate and remand to the district court. *See, e.g., United States v. Highsmith*, 688 F.3d 74, 78 (2d Cir. 2012) (vacating and remanding to the district court for resentencing consistent with the panel's opinion and the Supreme

---

[6] Plaintiffs suggest in their supplemental briefing that "Goldman has forfeited any objection that the district court erred in failing to account for the nature of the statements." Pls.' Suppl. Br. at 3 n.1. In adherence to the Supreme Court's decision, we need not address whether Goldman sufficiently preserved the argument.

Court's intervening decision). Although the Supreme Court did not disturb our legal conclusions, it supplemented them with new ideas. For example, the Court made explicit that expert testimony as well as "common sense" should inform courts' evaluation of the evidence and agreed with the parties that "a more-general statement will affect a security's price less than a more-specific statement on the same question." *Goldman*, 141 S. Ct. at 1960 (citation omitted). The Court also specified that the inference required for the inflation-maintenance theory—"that the back-end price drop equals front-end inflation—starts to break down when there is a mismatch between the contents of the misrepresentation and the corrective disclosure," which "may occur when the earlier misrepresentation is generic . . . and the later corrective disclosure is specific." *Id.* at 1961. Finally, on the burden of persuasion, the Court agreed with our holding that Goldman bears the burden but explained that "[t]he district court's task is simply to assess all the evidence of price impact—direct and indirect—and determine whether it is more likely than not that the alleged misrepresentations had a price impact. The defendant's burden of persuasion will have bite only when the court finds the evidence in equipoise." *Id.* at 1963.

Because it is unclear whether the district court considered the generic nature

of Goldman's alleged misrepresentations, and in light of the Supreme Court's clarifications of the legal standard, we vacate the district court's order and remand for further proceedings consistent with this opinion and the opinion of the Supreme Court. On remand, the district court should consider all record evidence relevant to price impact and apply the legal standard as supplemented by the Supreme Court. We express no views as to whether the evidence suffices to rebut the *Basic* presumption or whether the district court might want to accept additional briefing by the parties.

## CONCLUSION

We **VACATE** the district court's August 14, 2018 order granting Plaintiffs' motion for class certification and **REMAND** for further proceedings consistent with this opinion and the Supreme Court's opinion. Any future appeals of the district court's decisions in this action shall be referred to this panel.