**IN THE**

# United States Court of Appeals
## For the Second Circuit

AUGUST TERM, 2020

SUBMITTED: APRIL 8, 2021
DECIDED: DECEMBER 29, 2021

No. 20-1502-PR

LAWRENCE SAVOCA,

*Plaintiff - Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant - Appellee.*

_____

On Appeal from the United States District Court
for the Southern District of New York

_____

Before: CALABRESI, RAGGI, AND MENASHI, *Circuit Judges.*

_____

Lawrence Savoca, who stands convicted of conspiratorial and attempted

Hobbs Act robbery, *see* 18 U.S.C. § 1951(a); discharging a firearm during a crime

of violence, *see id.* § 924(c); and being a felon in possession of a firearm, *see id.* § 922(g)(1), appeals from a judgment of the District Court for the Southern District of New York (Vincent L. Briccetti, *Judge*), dismissing a second or successive petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2255. He argues that (1) his fifteen-year sentence as a career offender under the Armed Career Criminal Act, *see* 18 U.S.C. § 924(e), is invalid in light of the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015); and (2) his consecutive ten-year sentence is invalid because attempted Hobbs Act robbery is not a crime of violence, *see* 18 U.S.C. § 924(c).

Affirmed by opinion filed this date.

———————————————

BARRY D. LEIWANT, Assistant Federal Public Defender (Edward Scott Zas, Assistant Federal Public Defender, *on the brief*), Federal Defenders of New York, Inc., New York, NY, *for Plaintiff - Appellant.*

CELIA V. COHEN, Assistant United States Attorney (Karl N. Metzner and Won S. Shin, Assistant United States Attorneys, *on the brief*), *for* Audrey Strauss, Acting United States Attorney for the Southern District of New York, New York, NY, *for Defendant - Appellee.*

———————————————

CALABRESI, *Circuit Judge*:

Lawrence Savoca, an inmate incarcerated for a 2004 conviction for conspiratorial and attempted Hobbs Act robbery, *see* 18 U.S.C. § 1951(a); discharging a firearm during a crime of violence, *see id.* § 924(c); and being a felon in possession of a firearm, *see id.* § 922(g)(1), contends that his fifteen-year sentence for the last crime was based on a provision of the Armed Career Criminal Act, *see* 18 U.S.C. § 924(e), that the Supreme Court later found unconstitutional. *See Johnson v. United States*, 576 U.S. 591 (2015). He therefore claims he should be able to challenge his punishment through a "successive motion" for habeas corpus. *See* 28 U.S.C. § 2255(h). The district court disagreed. After a careful review of Mr. Savoca's case, it concluded that the sentencing court had grounded the challenged punishment on a different statutory provision, which remains constitutionally sound. Mr. Savoca therefore can, at most, challenge statutory errors. This, the district court found, barred Mr. Savoca's successive habeas petition.

We cannot say the district court's determination as to the grounds that the original sentencing court relied on — essentially, a determination of historical fact — was reversible error. As for Mr. Savoca's other claim for relief, which questions whether attempted Hobbs Act robbery is a crime of violence under 18 U.S.C. §

3

924(c), it is both barred procedurally and fails on the merits in light of our recent decision in *United States v. McCoy*, 995 F.3d 32, 57 (2d Cir. 2021). We, therefore, affirm the district court's dismissal of Mr. Savoca's petition.

**BACKGROUND**

In 2004, Lawrence Savoca was convicted after trial for various crimes based on his role in the June 2001 armed robbery of a tavern owner. At issue on appeal are Mr. Savoca's habeas challenges to the sentences imposed for two counts of conviction, specifically, the fifteen-year term imposed under the Armed Career Criminal Act (ACCA) for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and the consecutive ten-year term for discharging a firearm while committing a "crime of violence" (namely, attempted Hobbs Act robbery), *id.* § 924(c)(1)(A)(iii).[1]

In February of 2005, the trial court (Stephen C. Robinson, *Judge*) sentenced Mr. Savoca. While Mr. Savoca's counsel made several objections to the Presentence Investigation Report (PSR), none are relevant to this appeal. The PSR listed Mr.

---

[1] Mr. Savoca does not challenge those parts of his sentence stemming from his other convictions — for conspiracy to commit Hobbs Act robbery and for attempted Hobbs Act robbery. *See* 18 U.S.C. §§ 2, 1951(a).

Savoca's prior convictions. Among these were three New York State burglary convictions from 1991. In each case, according to descriptions drawn from police reports and from state PSRs, Mr. Savoca entered a residence and stole jewelry or cash. For each of these three convictions, he received concurrent sentences of eight years to life.[2]

After considering the PSR, the government's sentencing briefs and oral argument, and other materials, the trial court imposed a total thirty-year sentence. This term included ten years for discharging a weapon during a crime of violence (specifically, attempted Hobbs Act robbery). It also included fifteen years for being a felon in possession of a firearm, a period set by the court's determination that Mr. Savoca fell within the so-called "career criminal" provision of the ACCA. *See* 18 U.S.C. § 924(e)(1).

On direct appeal, this Court affirmed both Mr. Savoca's conviction and sentence. *United States v. Savoca*, 151 F. App'x 28 (2d Cir. 2005). He then filed his first motion for habeas corpus relief pursuant to 28 U.S.C. § 2255 ("Section 2255"), which the district court dismissed. *Savoca v. United States*, Nos. 07-CV-2524 &

---

[2] Mr. Savoca served these sentences from August 1991 to June 2001, at which time he was released on parole.

5

10-CV-5750, 2013 WL 10054624 (S.D.N.Y. Aug. 8, 2013). Neither that initial appeal nor Mr. Savoca's first habeas petition raised the issues presented here.

In 2015, the Supreme Court held that part of the ACCA's career-criminal provision — its "residual clause" for defining "violent felonies" — was unconstitutionally vague. *Johnson*, 576 U.S. at 606.[3] At that point, Mr. Savoca filed a second habeas petition pursuant to Section 2255, claiming his sentence had been partly based on the "residual clause" that *Johnson* eliminated, and so must be vacated and corrected. He also challenged his sentence for discharging a firearm in a "crime of violence," arguing the predicate crime of attempted Hobbs Act robbery was not such an offense.

In July 2018, upon a timely request, we granted Mr. Savoca leave to file this successive Section 2255 motion, finding he had made the statutorily required "prima facie showing" that his claim implicated a law the Supreme Court had found unconstitutional (the ACCA's residual clause). Mot. Order at 1, *Savoca v. United States*, No. 18-1328 (2d Cir. July 5, 2018), ECF No. 28 (quoting *Blow v. United States*, 829 F.3d 170, 172 (2d Cir. 2016)). We then transferred Mr. Savoca's petition

---

[3] The Supreme Court later accorded this rule retroactive force for purposes of collateral review. *Welch v. United States*, 578 U.S. 120 (2016).

to the district court, *id.*, to consider, on the merits, if that petition indeed relied on a new rule of constitutional law (such that Mr. Savoca could present a successive Section 2255 motion).

Ultimately, the district court dismissed Mr. Savoca's motion. Reviewing the sentencing record, it found that the original sentencing court's career-criminal determination had been based not on the ACCA's now-unconstitutional residual clause, but on a different ACCA provision (one not at issue in *Johnson*). The district court also rejected Mr. Savoca's contention that attempted Hobbs Act robbery was not a "crime of violence," finding this argument both procedurally barred and substantively incorrect. It did, however, grant Mr. Savoca a certificate of appealability under 28 U.S.C. § 2253(c), by which he brings the instant appeal.

**DISCUSSION**

On appeal, Mr. Savoca argues that the district court erroneously rejected his claim that attempted Hobbs Act robbery is not a "crime of violence" for purposes of 18 U.S.C. § 924(c). He also argues that the district court reversibly erred when it found his sentence had not been grounded in the residual clause that *Johnson* held was unconstitutional (and, by extension, that the court erred in holding that he could not overcome the gatekeeping requirement of a successive habeas petition).

We review each claim in turn.

**I.      Discharge of a Weapon During a "Crime of Violence"**

Ten years of Mr. Savoca's sentence were imposed for a violation of 18 U.S.C. § 924(c) — discharging a firearm during a "crime of violence." The predicate "crime of violence" was attempted Hobbs Act robbery. Mr. Savoca contends that attempted Hobbs Act robbery is not, for purposes of Section 924(c), such a crime, making this part of his sentence improper. The district court rejected this argument, finding that Mr. Savoca's claim does not satisfy the procedural gatekeeping requirements of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), and that even if it did, it would fail on the merits.

After briefing was completed in this appeal, our Court issued *United States v. McCoy*, 995 F.3d at 32. There, we held that "Hobbs Act attempted robbery qualifies as a crime of violence under § 924(c)." *Id.* at 57. Thus, not only does AEDPA procedurally bar Mr. Savoca from raising this argument, but *McCoy* also forecloses it on the merits. Accordingly, we affirm the district court's decision to deny habeas relief on this claim.

**II.    ACCA "Career Criminal" Status**

Mr. Savoca also challenges the portion of his punishment stemming from the original sentencing court's finding that he fell within the ACCA's "career criminal" provision. He argues that the sentencing court relied on the ACCA's residual clause, a provision the Supreme Court later held was unconstitutional, in making this determination. And this, he claims, permits him to challenge his sentence collaterally through a second or successive habeas corpus petition. The district court disagreed; it found that Mr. Savoca's sentence was grounded in a different ACCA provision, one the Court had not found unconstitutional. It therefore dismissed his petition.

The district court's conclusion was not reversible error. To show why, we first outline the statutory framework of (1) second or successive habeas petitions under AEDPA, and (2) the ACCA's definitional provisions for career-criminal status. We then explain why, in assessing a district court's determinations of which ACCA clause a particular sentencing court relied on when deeming a particular defendant a career criminal, we generally employ the deferential "clear error" standard of review. Finally, applying this standard, we conclude that the district court did not reversibly err in dismissing Mr. Savoca's petition.

**A. Statutory Framework**

### 1. *AEDPA and Second or Successive Habeas Petitions*

Under AEDPA, inmates who have already filed one habeas petition (as has Mr. Savoca) face "stringent" limits in bringing a "second or successive application for a writ of habeas corpus." *Adams v. United States*, 155 F.3d 582, 583 (2d Cir. 1998). One path through these limits, and the one Mr. Savoca asserts, is to "show[] that [one's] claim relies on a *new rule of constitutional law*, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A) (emphasis added); *accord id.* § 2255(h)(2).

To make this showing, inmates must clear two hurdles. First, and usually on a transfer from a district court, an inmate must obtain an order from a court of appeals authorizing the district court to consider the application. *See id.* §§ 2244(b)(3), 2255(h). By statute, this review is limited; the court of appeals must complete it within 30 days of the time the motion is filed, and in doing so asks only if an applicant made a "prima facie showing that the application satisfies the requirements" of Section 2244. *Id.* § 2244(b)(3)(C)–(D); *see also Bell v. United States*, 296 F.3d 127, 128 (2d Cir. 2002) ("A prima facie showing is not a particularly high standard. An application need only show sufficient likelihood of satisfying the

strict standards of § 2255 to warrant a fuller exploration by the district court."

(internal quotation marks and citation omitted)).

If the court of appeals grants this preliminary authorization, the petition returns to the district court, which must then independently consider if the motion in fact relies on a "new rule of constitutional law," 28 U.S.C. § 2244(b)(3), or can otherwise satisfy AEDPA's strictures, *id.* § 2244(b)(4). Unlike the earlier, prima facie assessment by the court of appeals, the district court must engage in a searching inquiry, pursuant to which it "*shall* dismiss any claim presented in a second or successive application . . . unless the applicant *shows* that the claim satisfies [AEDPA's] requirements." *Id.* (emphases added).

### 2. *ACCA Career Criminal Definitional Provisions*

The other main statute at issue is the ACCA and its definitional provisions for so-called career criminals, a class of offenders subject to harsher sentences. Both at the time of Mr. Savoca's sentencing and today, career criminals include, among others, those convicted of at least three "violent felon[ies]." 18 U.S.C. § 924(e)(1). The ACCA sets out three discrete circumstances under which a conviction constitutes a "violent felony." These are known as (1) the "elements/force" clause; (2) the "enumerated" clause; and (3) the "residual" clause. For purposes of ACCA

career-criminal status, a "violent felony" is defined as "any crime punishable by imprisonment for a term exceeding one year" that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another [*elements/force clause*]; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives [*enumerated clause*], or
>
> otherwise involves conduct that presents a serious potential risk of physical injury to another[.] [*residual clause*]

18 U.S.C. § 924(e)(2)(B)(i)–(ii).

Notably, at the time Mr. Savoca was initially sentenced, the then-applicable federal Sentencing Guidelines paralleled this tripartite structure. Specifically, the Guidelines defined a "career offender," for sentencing purposes, as one who had committed at least three "crime[s] of violence." U.S.S.G. § 4B1.1(a) (U.S. Sentencing Comm'n Nov. 2004).[4] In turn, such a crime was defined as one that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another [*elements/force clause*], or

---

[4] With exceptions not relevant here, courts sentencing defendants must consider the Guidelines in effect on the date of sentencing. 18 U.S.C. § 3553(a)(4)(A)(ii); *United States v. Jones*, 878 F.3d 10, 15 n.3 (2d Cir. 2017). Thus, all references to the federal Sentencing Guidelines are to the November 1, 2004 version, in effect at the time of Mr. Savoca's sentencing in February 2005.

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives [*enumerated clause*], or

otherwise involves conduct that presents a serious potential risk of physical injury to another. [*residual clause*]

*Id.* § 4B1.2(a)(1)–(2).

In 2015, the Supreme Court held that the ACCA's residual clause was unconstitutionally vague in *Johnson v. United States*, 576 U.S. at 606. The Court then made this rule retroactive on collateral review, such that second or successive *Johnson*-based habeas challenges could satisfy AEDPA. *See Welch*, 578 U.S. at 135. The ACCA's other two violent felony clauses (elements/force and enumerated), however, remain in effect. *Johnson*, 576 U.S. at 606.

Mr. Savoca now argues that the original sentencing court found his "felonies" to have been "violent" based on the ACCA's residual clause, the clause *Johnson* subsequently held unconstitutional. He therefore asserts that AEDPA permits him to bring a successive habeas petition to challenge his sentence. Conversely, the government argues, and the district court agreed, that Mr. Savoca was, in fact, originally sentenced under the ACCA's *enumerated* clause, which was

13

not held unconstitutional by *Johnson*, and hence that AEDPA bars his successive petition.[5]

It is to this dispute that we turn.

**B.     Standard of Review**

The parties disagree as to the standard under which we should review the district court's finding that Mr. Savoca had, in fact, been sentenced under the enumerated, as opposed to the residual, clause. Mr. Savoca suggests that we should review the district court's determinations de novo, including that court's assessment of sentence-record materials like the sentencing hearing transcript and the PSR.

The government counters that we should treat the district court's assessment of the sentencing court's reasoning as, essentially, a question of fact, reviewed under the deferential standard of "clear error." On this standard, we will only reverse a district court's findings if "on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed." *Ark. Tchr.*

---

[5] Neither party claims Mr. Savoca's sentence relied on the ACCA's elements/force clause.

*Ret. Sys. v. Goldman Sachs Grp., Inc.*, 11 F.4th 138, 142 (2d Cir. 2021) (internal quotation marks omitted).

We agree with the government. It is well-established that while we "review[] *de novo* the legal conclusions underlying a district court's denial of a motion for relief under 28 U.S.C. § 2255," we "defer . . . to a district court's findings of fact unless they are clearly erroneous." *Massey v. United States*, 895 F.3d 248, 251 n.7 (2d Cir. 2018) (internal quotation marks omitted, ellipses in original); *see also Rivera v. United States*, 716 F.3d 685, 687 (2d Cir. 2013) (same); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (similar). And the question of whether a particular sentencing record reflects a particular court's reliance on a particular ACCA clause is, at base, a question of historical fact. *Cf. Walker v. United States*, 900 F.3d 1012, 1015 (8th Cir. 2018) ("Whether the residual clause provided the basis for an ACCA enhancement is a factual question for the district court."); *United States v. Driscoll*, 892 F.3d 1127, 1132–33 (10th Cir. 2018) (when considering if sentencing court relied on the ACCA's residual clause, "factual determinations about the sentencing record [are reviewed] for clear error and the legal conclusions about the relevant background legal environment [are reviewed] de novo").

The aptness of clear error review is reflected by the sorts of factors and sources a district court needs to consider — factors the district court rightly considered in this case — when determining which ACCA clause an original sentencing court had, in fact, relied on. In conducting this inquiry, a district court must look to a wide range of materials, including the parties' oral and written sentencing arguments, sentencing hearing transcripts, PSRs, and similar parts of the sentencing record.

Of course, this precise list of materials need not be robotically reviewed by the district court in every case (and, indeed, may not be present in all cases). But, in any event, such review is manifestly a fact-specific undertaking and thus constitutes an inquiry for which we are rightly deferential to the district court's findings.

Moreover, deferential, clear error review at this stage coheres with AEDPA's statutory structure. In AEDPA, Congress set up a division of labor for reviewing successive habeas petitions. With respect to second or successive habeas petitions, courts of appeals are tasked with making initial, prima facie assessments as to whether a petition might overcome AEDPA's stringencies. 28 U.S.C. § 2244(b)(3)(C). But after this review, the law shifts responsibility to the district

courts, which are tasked with assessing, on the merits, each petition's substantive compliance with AEDPA. *Id.* § 2244(b)(4). This review necessarily entails a detailed focus on the factual circumstances underlying the sentencing court's decision. Accordingly, if, as Mr. Savoca proposes, courts of appeals reviewed the district courts' factual determinations informing their merits determinations de novo, then courts of appeals would act as both prima facie gatekeepers *and* full merits adjudicators, and would do so at highly separate times. It seems unlikely that Congress intended that result.

Mr. Savoca's responses are unavailing. He argues that because the original sentencing judge in his case was a different person than the habeas district court judge, less deference is required. Some courts, admittedly, treat identity between sentencing judge and habeas judge as a factor justifying deference. *See, e.g.*, *Dimott v. United States*, 881 F.3d 232, 237 (1st Cir. 2018) (according "due weight" to district court's determination of ACCA clause because "habeas judge was describing *his own decisions* at sentencing"). But Mr. Savoca offers no authority from this Court, and we could find none, to suggest such identity is a prerequisite for the deferential clear error standard. To the contrary, our Court has endorsed clear error review of district court fact-finding on a habeas petition even where the

17

underlying sentence was imposed not just by a different court, but by a wholly different court system. *Cf. Jenkins v. Greene*, 630 F.3d 298, 302 (2d Cir. 2010) (in habeas context, court of appeals reviews district court's "factual finding[s]" as to circumstances of original *state* court sentencing "for clear error").

Mr. Savoca's reference to *Kaminski v. United States* is likewise unpersuasive. 339 F.3d 84 (2d Cir. 2003). There, we stated, in a single sentence, that "[w]e review de novo a district court's denial of a 28 U.S.C. § 2255 petition." *Id.* at 86. But *Kaminski* turned on the pure legal question of whether restitution orders imposed "custody" for habeas purposes. *See id.* at 85. As such, it presented no reason to consider the standard for reviewing district court factual findings and is inapposite. By contrast, when presented with such factual findings, as our more recent habeas cases show, we consistently review district court conclusions for clear error. *See, e.g.*, *Massey*, 895 F.3d at 251 n.7; *Rivera*, 716 F.3d at 687.

Mr. Savoca further argues that de novo review is appropriate because the instant dispute is predominantly legal, not factual. This is so, he claims, because the outcome turns not on the specific words the sentencing record contains, as to which there is no "factual dispute," but on the "legal significance" of those words. Appellant's Br. 19–20. But the only Second Circuit case Mr. Savoca cites for this

proposition, *United States v. Haak*, involved a dramatically different situation: a suppression motion where an arrestee's non-custodial interview had been fully videotaped, and where there were "no disputes of fact as to the actions taken, words spoken, or demeanor displayed" — in other words, where the only dispute concerned the "legal significance of certain words spoken." 884 F.3d 400, 408 (2d Cir. 2018). Here, by contrast, the parties essentially agree on the legal rules: if Mr. Savoca were sentenced under the residual clause, he may collaterally challenge his sentence; if he were sentenced under the enumerated clause, he may not. Instead, the parties' disagreement, unlike that in *Haak*, is a factual one: whether, as a matter of historical fact, the sentencing court relied on the ACCA's residual clause, or on its enumerated clause.[6]

---

[6] Mr. Savoca argues that the district court erred in failing to grant a hearing before deciding these facts. Hearings, to be sure, are often desirable in aid of such district court fact-finding. But our Court has never made them a requirement for clear error deference, and we decline to do so now. *See, e.g., Scanio v. United States*, 37 F.3d 858, 859–60 (2d Cir. 1994) (applying clear error standard, without imposing any district court hearing requirement, to review of a district court's Section 2255 factual determinations); *but see United States v. Copeland*, 921 F.3d 1233, 1242 (10th Cir. 2019) ("[O]ur review of a district court's denial of a § 2255 *Johnson* claim is de novo unless the court conducted an evidentiary hearing from which it made findings.").

**C.    Application**

Applying this deferential standard, we cannot say the district court clearly erred in finding that the original sentencing court's ACCA career-criminal determination was grounded in the enumerated clause, as opposed to the (now-unconstitutional) residual clause.

### *1. The Sentencing Record*

Under the ACCA's enumerated clause, one type of "violent felony" is "burglary." 18 U.S.C. § 924(e)(2)(B)(ii). The district court found that the original sentencing court had based Mr. Savoca's ACCA punishment on this provision, stating that the "only fair reading of the record as a whole is that the government" — and the sentencing court — "w[ere] relying on the [ACCA's] enumerated offenses clause, not the residual or force clauses." App'x at 229. We cannot say this finding was clear error.[7]

---

[7] As Mr. Savoca notes, there is currently a circuit split as to a petitioner's burden of proof where the sentencing record is "unclear" as to which ACCA clause an original sentencing court relied on. Some circuits, like the Fourth and Ninth, have adopted a "may have relied" approach, under which, if the record shows a sentencing court "may have" relied on the residual clause, inmates can bring a successive habeas petition on *Johnson* grounds. *See, e.g., United States v. Winston*, 850 F.3d 677, 682 (4th Cir. 2017), *abrogated on other grounds by Stokeling v. United States*, 139 S. Ct. 544 (2019); *United States*

As the district court observed, the government, in its written and oral original-sentencing arguments, consistently focused on the "burglary" nature of Mr. Savoca's crimes. At the sentencing hearing, for instance, prosecutors stated, in discussing the application of the Guidelines, that "if you've been convicted of three prior violent felonies — and *a residential burglary is one* — in the past and then you're convicted of [Section] 922(g), you are an armed career criminal." App'x at 87 (emphasis added). Likewise, in its sentencing memorandum, the government specifically emphasized that Mr. Savoca had committed, and been convicted of, "*three* residential burglaries," further underscoring this point. App'x at 130 (emphasis in original).

The government's repeated mentions of "burglary" were, of course, references to the ACCA's enumerated clause. But they also strongly evoked the parallel enumerated clause of the federal Sentencing Guidelines. Specifically, the

---

*v. Geozos*, 870 F.3d 890, 896 (9th Cir. 2017), *overruled on other grounds by Stokeling*, 139 S. Ct. at 544. Others adopt a more stringent standard, requiring petitioners to show that it is "more likely than not" that a sentencing court relied on the ACCA's residual clause before granting relief. *See, e.g.*, *United States v. Clay*, 921 F.3d 550, 558–59 (5th Cir. 2019), *as revised* (Apr. 25, 2019); *Dimott*, 881 F.3d at 243. But, because the district court did not find the record in the instant case to be unclear, and because that determination was not clearly erroneous, we have no reason to weigh in on this dispute.

Guidelines' enumerated clause for "career offender" status included, at the time of Mr. Savoca's sentencing, "burglary *of a dwelling*." U.S.S.G. § 4B1.2(a)(2) (emphasis added). That the government's sentencing arguments focused so squarely on the *residential* nature of Mr. Savoca's burglary offenses therefore indicates that it sought (and that the sentencing court subsequently applied) an enhancement flowing from the enumerated clause of the relevant Guideline, a provision mirroring the ACCA's own enumerated clause.

By contrast, in its review of the original sentencing record, the habeas district court did not (nor could we) find any reference at all to the ACCA's residual clause. Nor did the district court (nor could we) find any suggestion that the sentencing court engaged in the sort of analysis that would have been expected if the residual clause were being applied. This might, for example, have entailed assessing the degree to which Mr. Savoca's conduct "present[ed] a serious potential risk of physical injury." 18 U.S.C. § 924(e)(2)(B)(ii).

Against this, Mr. Savoca points us to a footnote in the government's sentencing memorandum, which stated:

> Because of its *potential for violence*, because it robs the victim of a sense of security in the place where he or she should be most secure, and because it violates the most personal space of a victim, the crime of

22

residential burglary is categorized as a violent felony at both state and federal law.

App'x at 130 n.6 (emphasis added).

This reference to "potential for violence," Mr. Savoca suggests, invokes the residual clause's mention of "serious potential risk." Appellant's Br. 40–41. But as the district court found, "construed in context, the footnote's reference to burglary's 'potential for violence' is a reference to just one of several factors that make burglary such a serious offense." App'x at 229. Indeed, if anything, the footnote supports the *government's* position on Mr. Savoca's habeas petition, for it closely tracks language that the ACCA's sponsors used to justify adding "burglary" to the *enumerated* clause. *See Taylor v. United States*, 495 U.S. 575, 581 (1990) (recounting Senate sponsor's statement that "burglary" was added to *enumerated* clause "because [burglary] involves invasion of victim's homes or workplaces, violation of their privacy, and loss of their most personal and valued possessions" (internal quotation marks and alteration omitted)).

To be sure, as Mr. Savoca notes, neither the original sentencing court nor the government at sentencing explicitly discussed the enumerated clause. But the district court was aware of this fact, took it into consideration, and found it did not

23

outweigh the other factors that it considered. In such a fact-specific balancing situation, we again discern no clear error.

### 2. Background Legal Conditions

Apart from the sentencing record, Mr. Savoca argues that background legal conditions at the time of sentencing in February 2005 would have made it legal error to apply the enumerated clause to his case, while making it relatively simple to apply the residual clause. This, he says, means the original sentencing court most likely relied on the latter.

Background legal conditions are, in addition to the sentencing record discussed above, a factor that district courts may appropriately consider when determining the ACCA grounds on which an original sentencing court relied. *See, e.g.*, *Geozos*, 870 F.3d at 896. But the role of such conditions is limited, for, as we have outlined, the district court's principal inquiry is discerning on which ACCA clause, as a matter of historical fact, a particular sentencing court relied. To illustrate, if review of a sentencing record clearly showed that a sentencing court sought to impose punishment under the enumerated clause (*e.g.*, by a statement to that effect), then the fact that application of that clause would have been legally erroneous (say, by misreading the statutory definition of "burglary" or "arson")

would not, without more, allow for Section 2255 review, as the underlying error would have been of statutory, not constitutional, dimension. *See, e.g.*, *Massey*, 895 F.3d at 252 (Section 2255 review unavailable for successive habeas petition claiming sentencing court committed *statutory* error in application of ACCA's elements/force clause).

Where, however, the sentencing record is unclear as to the clause on which an original sentencing court had, in fact, relied, habeas district courts should consider the likelihood that applying a given clause would have been legal error at the time of sentencing, and should not assume sentencing courts would have chosen a legally erroneous clause over a legally permissible one. *Cf. United States v. Snyder*, 871 F.3d 1122, 1128–30 (10th Cir. 2017). This conclusion follows from the familiar principle that, absent countervailing evidence, reviewing courts should assume that sentencing courts "knew and applied the law correctly." *United States v. Broxmeyer*, 699 F.3d 265, 287 (2d Cir. 2012) (citation omitted).

But that is not this case. Here, the district court found, based on the sentencing record, that the original sentencing court, as a matter of historical fact, clearly relied on the enumerated clause in determining Mr. Savoca's ACCA career

criminal status, obviating the need to resort to background legal conditions to resolve an ambiguity.[8]

---

[8] Incidentally, even if we were to look to contemporaneous background legal conditions, Mr. Savoca has failed to show that, in his case, such conditions would have barred, or even hampered, the original sentencing court's use of the enumerated clause. Instead, as the district court found, nothing in the legal background in February 2005 precluded, or even greatly complicated, the classification of Mr. Savoca's 1991 felony burglaries as "violent felonies" under ACCA's enumerated clause. In particular, the three 1991 felony burglary convictions at issue in the instant case were obtained by guilty pleas. While the Supreme Court in *Taylor v. United States*, 495 U.S. at 602, addressed the ACCA treatment of "nongeneric-burglary" convictions obtained at *trial*, it left open the issue of how such convictions should be analyzed following a *guilty plea*, as well as whether such convictions could fit within the enumerated clause. Thus, as of the date of Mr. Savoca's sentencing, February 2005, the original sentencing court would not have committed legal error by using the information in Mr. Savoca's PSR — itself composed of unobjected-to facts relayed from police reports and earlier, state PSRs — to determine that each such burglary had in fact been a "violent felony" for purposes of the ACCA's enumerated clause. Indeed, it was only after Mr. Savoca's sentencing that the contours of this issue came to be defined. *See Shepard v. United States*, 544 U.S. 13, 26 (2005) (March 2005 decision, issued one month after Mr. Savoca's sentencing, setting out limits on materials that courts could consider when assessing if convictions obtained by *guilty pleas* were violent felonies for ACCA purposes); *United States v. Rosa*, 507 F.3d 142, 151–52 (2d Cir. 2007) ("*Shepard* addressed a question [previously] *left open* by *Taylor*: What may a district court consider to determine whether the offense of conviction following a guilty plea, rather than trial, qualifies as [an ACCA] 'violent felony'?" (emphasis added)); *id.* at 156 (recognizing then-open question as to whether, if a defendant failed to object to a PSR's findings (as happened here), "a sentencing court may look to [that] PSR . . . to determine [if] the underlying facts of a previous conviction" constituted an ACCA "violent felony").

**CONCLUSION**

We cannot say, given the circumstances of this case, that the district court clearly erred in determining that the original sentencing court had based Mr. Savoca's punishment on the ACCA's enumerated clause, rather than the residual clause that *Johnson* held was unconstitutional. Therefore, AEDPA bars Mr. Savoca from filing a second, successive habeas petition. 28 U.S.C. §§ 2244(b)(2), 2255(h). Accordingly, the district court's dismissal of Mr. Savoca's petition under 28 U.S.C. § 2255 is AFFIRMED.