Peguero Vasquez v. Garland

IN THE

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2022
Argued: September 28, 2022
Decided: September 13, 2023

No. 21-6380
_____

JOSE RAMON PEGUERO VASQUEZ,

*Petitioner*,

v.

MERRICK B. GARLAND,

United States Attorney General,

*Respondent*.

_____

Before: JACOBS, CHIN, and ROBINSON, *Circuit Judges*.

Jose Ramon Peguero Vasquez petitions for review of a decision of the

Board of Immigration Appeals affirming the finding that he is removable on the

ground that he committed a crime involving moral turpitude for which "a

sentence of one year or longer may be imposed."   8 U.S.C. § 1227(a)(2)(A)(i).

The predicate offense, a 2017 conviction for possession of a forged instrument, is

a Class A misdemeanor under New York law.   In 2019, after his conviction, New York enacted Penal Law Section 70.15(1-a), which lowered the maximum possible sentence for Class A misdemeanors from one year to 364 days. Peguero Vasquez asserts that, because the statute is retroactive for state law purposes, his prior conviction no longer constitutes a basis for removal because it is not a crime for which "a sentence of one year or longer may be imposed," as required by the removal statute.   8 U.S.C. § 1227(a)(2)(A)(i).

We decline to give retroactive effect to New York's modification of its sentencing scheme for purposes of federal immigration law.   The removal statute focuses on the historical fact of an alien's prior conviction, and thereby consults the state law applicable at the time of the *criminal* proceedings, not at the time of the *removal* proceedings.   Peguero Vasquez's petition is therefore **DENIED**.

Judge Robinson dissents in a separate opinion.

_____

TIFFANY J. LIEU (Philip L. Torrey, *on the brief*), Crimmigration Clinic, Harvard Law School, Cambridge, MA, *for Petitioner*.

Rohmah A. Javed, John H. Peng, Laura A. Rion, Prisoners' Legal Services of New York, Albany, NY, *for Petitioner*.

ERICA B. MILES, Senior Litigation Counsel, Office of Immigration Litigation (Craig A. Newell, Jr., Senior Litigation Counsel, *on the brief*), *for* Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, D.C., *for Respondent*.

Mauricio E. Noroña, The Kathryn O. Greenberg Immigration Justice Clinic, Benjamin N. Cardozo School of Law, New York, NY for *Amici Curiae* Brooklyn Defender Services; The Kathryn O. Greenberg Immigration Justice Clinic, Benjamin N. Cardozo School of Law; The Bronx Defenders; and The Legal Aid Society.

Andrew Wachtenheim, Nabilah Siddiquee, Immigrant Defense Project, New York, NY, for *Amicus Curiae* Immigrant Defense Project.

DENNIS JACOBS, *Circuit Judge*:

The Department of Homeland Security placed Jose Ramon Peguero Vasquez in removal proceedings on account of prior convictions for, among other things, criminal possession of a forged instrument in violation of New York law. An immigration judge found that this offense, committed in 2017, was a crime involving moral turpitude for which "a sentence of one year or longer may be imposed," making Peguero Vasquez removable under Section 237(a)(2)(A)(i) of the Immigration and Nationality Act. 8 U.S.C. § 1227(a)(2)(A)(i) (hereinafter "Section 237"). The Board of Immigration Appeals affirmed.

3

In 2019, the New York legislature reduced the maximum possible sentence for Class A misdemeanors under New York law (including the forged instrument offense to which Peguero Vasquez pleaded guilty) from one year to 364 days. The provision, Penal Law Section 70.15(1-a), has retroactive effect for state law purposes. In the immigration proceedings below, and in his petition to this Court, Peguero Vasquez argues that his prior conviction is therefore no longer one "for which a sentence of one year or longer may be imposed," id., so that he is no longer removable for a crime involving moral turpitude.

We deny the petition. By focusing on the historical fact of an alien's prior conviction, Section 237 unambiguously depends on the state law applicable at the time of the *criminal* proceedings, not at the time of the *removal* proceedings. This affixes immigration consequences to the alien's offense when it was committed, rather than to how it may be viewed by the legislature at some future point. It also accords with the longstanding approach taken by the BIA to retroactive sentencing relief given by state courts when such relief is intended to vitiate the collateral consequences of a conviction, including immigration consequences.

# I

Peguero Vasquez, a citizen of the Dominican Republic, was admitted to the United States as a permanent resident in 2012. In 2017, he pleaded guilty in the Bronx County Supreme Court to criminal possession of a forged instrument in the third degree—a Class A misdemeanor under Section 170.20 of the New York Penal Law—because of his use of a fraudulent license plate. The administrative record indicates that he was sentenced to a fine of $1,000 and one year of imprisonment.[1] Certified Admin. Record at 721. Peguero Vasquez was subsequently convicted for criminal possession of heroin in March 2019 in the

---

[1] Peguero Vasquez asserts that the certificate of disposition entered into the administrative record wrongly states that he was sentenced to a term of one year of imprisonment, whereas he "in fact received a one-year term of *conditional discharge*" instead. Petitioner Br. at 7 n.1. He indicates that he has separately sought to reopen his removal proceedings "in light of this new evidence," id., and does not argue that the BIA's decision should be vacated on these grounds.

In any event, we decide the petition "only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A). Even if we could consider the corrected certificate of disposition, the relevant ground for removability applies to crimes involving moral turpitude for which "a sentence of one year or longer *may* be imposed," id. § 1227(a)(2)(A)(i)(II) (emphasis added), and does not depend on the length or nature of the sentence that was actually imposed. See, e.g., Henriquez v. Sessions, 890 F.3d 70, 73–74 (2d Cir. 2018).

5

New York County Supreme Court.

In 2020, the Department of Homeland Security ("DHS") initiated removal proceedings against Peguero Vasquez based on the heroin conviction. It subsequently added, as a further charge of deportability, that his guilty plea for criminal possession of a forged instrument constituted an aggravated felony and a crime involving moral turpitude under Section 237(a)(2)(A)(i) of the Immigration and Nationality Act ("INA"). Peguero Vasquez admitted the facts of his convictions but denied that they were qualifying offenses under the INA. For procedural reasons, the issue of removability depends on the forgery conviction only.[2]

In April 2019, after Peguero Vasquez's forged instrument conviction, the New York legislature amended New York Penal Law Section 70.15 to reduce retroactively the maximum sentence for all Class A misdemeanors from one year

---

[2] After affirming the IJ's determination that Peguero Vasquez was removable for committing a crime involving moral turpitude, the BIA declined to review the IJ's determination that he was separately removable for having committed an aggravated felony or a controlled substance offense. Certified Admin. Record at 5–6. Accordingly, we do not review these aspects of the IJ's order. See Xue Hong Yang v. U.S. Dep't of Just., 426 F.3d 520, 522 (2d Cir. 2005).

to 364 days.  *See* N.Y. PENAL LAW § 70.15(1-a).[3]  The "legislature's intent in

enacting Penal Law § 70.15(1-a) was to help undocumented persons avoid

deportation as a result of one-year or 365-day sentences on misdemeanor

convictions."  People v. Janvier, 130 N.Y.S.3d 486, 491 (App. Div. 2020).

Peguero Vasquez argued in the Immigration Court that he was not

removable because (i) criminal possession of a forged instrument does not

qualify as a crime involving moral turpitude ("CIMT"), and because (ii) his

---

[3] Section 70.15 provides, in relevant part:

> (a) Notwithstanding the provisions of any other law, whenever the phrase 'one year' or 'three hundred sixty-five days' or '365 days' or any similar phrase appears in any provision of this chapter or any other law in reference to the definite sentence or maximum definite sentence of imprisonment that is imposed, or has been imposed, or may be imposed after enactment of this subdivision, for a misdemeanor conviction in this state, such phrase shall mean, be interpreted and be applied as three hundred sixty-four days.

>         *       \*       \**

> (c) Any sentence for a misdemeanor conviction imposed prior to the effective date of this subdivision that is a definite sentence of imprisonment of one year, or three hundred sixty-five days, shall, by operation of law, be changed to, mean and be interpreted and applied as a sentence of three hundred sixty-four days.

N.Y. PENAL LAW § 70.15(1-a)(a), (c).

conviction for criminal possession of a forged instrument no longer made him removable because the CIMT charge of removability is limited to crimes carrying a possible sentence of one year or more.[4]   Relying on Jordan v. De George, 341 U.S. 223, 227–32 (1951), the IJ held that criminal possession of a forged instrument qualifies as a CIMT because one element of the offense is an intent to defraud, deceive, or injure another.   The IJ also denied retroactive effect to Section 70.15 under BIA precedent, and therefore sustained the charge of removability under Section 237.   The BIA affirmed.

Peguero Vasquez timely petitioned for review.   He argues that the IJ and BIA erred by finding him removable despite the retroactive effect of Section 70.15 on his conviction.   He also argues that the term "crime involving moral turpitude" is unconstitutionally vague.

---

[4] Although the amendments to Section 70.15 contemplate a procedure for vacating or modifying criminal convictions that are inconsistent with its sentencing reduction, see N.Y. PENAL LAW § 70.15(1-a)(d), Peguero Vasquez does not challenge the BIA's determination that he had concededly failed to obtain a vacatur of his conviction.   So we need not consider any possible ramification of vacatur.

## II

Whether a conviction qualifies as a ground for removal under the INA is a legal question that is reviewed <u>de novo</u>.  <u>Matthews v. Barr</u>, 927 F.3d 606, 612 (2d Cir. 2019).  "'To the extent the question requires us to construe a provision of the INA, however, because the administration of that statute is entrusted to the BIA, our review follows the two-step process'" set out in <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984).  <u>Id.</u> (quoting <u>Mizrahi v. Gonzales</u>, 492 F.3d 156, 157–58 (2d Cir. 2007)).  We must first ask "whether Congress has directly spoken to the precise question at issue." <u>Chevron</u>, 467 U.S. at 842.  If the statute "is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."  <u>Id.</u> at 843.

## III

Under Section 237 of the INA, a lawful permanent resident "is deportable" if "convicted of a crime involving moral turpitude" committed within five (or ten) years "after the date of admission" and "for which a sentence of one year or longer may be imposed."  8 U.S.C. § 1227(a)(2)(A)(i).  Peguero Vasquez does not contest that his conviction would be a crime involving moral turpitude (if,

9

contrary to his view, such a categorization were constitutional) or that he committed it within five years after his admission into the United States. Instead, because of New York's retroactive amendment to the sentencing scheme, he argues that he is no longer convicted of a crime for which "a sentence of one year or longer may be imposed."   Id.

The BIA concluded that Section 70.15(1-a) should not be given effect for purposes of federal immigration laws.   It relied principally on its decision in Matter of Velasquez-Rios, 27 I. & N. Dec. 470, 472 (2018), which denied effect to a similarly retroactive California law that reduced the maximum possible sentence for a class of misdemeanors to 364 days.   Peguero Vasquez argues that Matter of Velasquez-Rios wrongly construed the INA.

## A

The petitioner in Matter of Velasquez-Rios was convicted of possession of a forged instrument in violation of section 475(a) of the California Penal Code, for which the maximum possible sentence at the time of his conviction was 365 days.   Id. at 470–71.   The Immigration Court ruled that the petitioner was disqualified from seeking cancellation of removal because he was convicted of a CIMT "'for which a sentence of one year or longer may be imposed.'"   Id. at 471

10

(quoting 8 U.S.C. § 1227(a)(2)(A)(i)).   While his appeal to the BIA was pending, California amended its penal code to retroactively shorten the maximum possible sentence for any offense punishable by up to one year in a county jail to "a period *not to exceed 364 days*."   Id. (quoting CAL. PENAL CODE § 18.5(a)).   The petitioner argued, much like Peguero Vasquez, that the amendment to the state's criminal law removed his conviction as an obstacle to immigration relief.

The BIA began with the general principle that it "must use *Federal law*, rather than *State law*, to determine the immigration consequences of the respondent's California conviction."   Id. at 474.   It interpreted Section 237 of the INA to require "a backward-looking inquiry into the maximum possible sentence the respondent could have received for his . . . offense at the time of his conviction."   Id.   For this conclusion, it relied on the Supreme Court's decision in McNeill v. United States, 563 U.S. 816 (2011), which interpreted a provision of the Armed Career Criminal Act ("ACCA").   Under the ACCA, a prior state law drug conviction qualifies as a "serious drug offense," thereby enhancing a defendant's sentence, if "a maximum term of imprisonment of ten years or more *is prescribed by law*" for the offense.   18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added); McNeill, 563 U.S. at 817.   The Supreme Court held that,

11

notwithstanding the use of the present tense ("is prescribed by law"), the statute's reference to prior convictions necessarily pointed to "the law under which the defendant was convicted," rather than "the law in effect at the time of the federal sentencing, as if the state offense were committed on the day of the federal sentencing." McNeill, 563 U.S. at 820. The BIA reasoned that this logic "embodied in McNeill . . . applies with equal force" to the similar language of Section 237. Matter of Velasquez-Rios, 27 I. & N. Dec. at 474.

The BIA also recognized that Section 237, by its text, makes the alien's actual criminal sentence (and any subsequent modifications to it) irrelevant. Id. at 474 & n.9. Section 237 applies to state law offenses for which a one-year maximum sentence "*may* be imposed," not to convictions for which such a sentence *was* imposed. 8 U.S.C. § 1227(a)(2)(a)(i)(II) (emphasis added). By contrast, "other provisions of the Act" require the agency "to consider the *actual* sentence" and thereby "necessitat[e] a fact-based inquiry into a State court judge's specific sentence or into subsequent modifications to that sentence." Matter of Velasquez-Rios, 27 I. & N. Dec. at 474 n.9; see also, e.g., 8 U.S.C. § 1101(a)(43)(G) (attaching consequences to an alien's conviction of theft or burglary "for which the term of imprisonment [is] at least one year"). In light of

12

the INA's text, therefore, and consistent with the agency's "long-standing practice of examining the statute of conviction and applicable penalty" as they "existed under the law in effect at the time the conviction was entered," the BIA held that the controlling time period for assessing whether a past offense makes an alien removable is the time of conviction, regardless of subsequent changes to state law.   Matter of Velasquez-Rios, 27 I. & N. Dec. at 473–74, 473 n.7.   The Ninth Circuit agreed, denying a petition to review.   Velasquez-Rios v. Wilkinson, 988 F.3d 1081, 1089 (9th Cir. 2021).

In the present case, the BIA relied largely on its decision in Matter of Velasquez-Rios to deny relief to Peguero Vasquez.   It held that although New York's amendment to Section 70.15 "may have retroactively modified the maximum possible sentence for the respondent's conviction . . . for the purposes of State law, 'it does not affect the immigration consequences of his conviction under . . . the [INA], a *Federal law*.'"   Certified Admin. Record at 4–5 (quoting Matter of Velasquez-Rios, 27 I. & N. Dec. at 472).   And it reemphasized its conclusion in Matter of Velasquez-Rios that Section 237 "calls for a backward-looking inquiry into the maximum possible sentence the alien *could have received* for his offense *at the time of his conviction*."   Id. at 5 (quotation marks omitted)

13

(emphasis in original).

## B

In interpreting the INA, we may conclude "that the language is ambiguous only after exhausting all the traditional tools of construction," including "the statutory text, structure, and purpose as reflected in the statute's legislative history." Quituizaca v. Garland, 52 F.4th 103, 108–09 (2d Cir. 2022) (quotation marks and alterations omitted). "If the statute is clear, we must carry out Congress's stated intent." Id.

Peguero Vasquez's petition places decisive weight on the statute's use of present tense, arguing that the reference to crimes "for which a sentence of one year or longer *may be imposed*," 8 U.S.C. § 1227(a)(2)(A)(i) (emphasis added), requires a present-facing inquiry into what possible sentence may attach to a petitioner's conviction at the time of the removal proceedings.

There is no doubt that the federal removal statute is backward-looking. True, the present tense is used in some places; but to determine whether an alien is removable, Section 237 requires the agency to consider whether the individual stands "convicted" of a serious CIMT within five (or ten) years "after the date of admission." Id. The statute thus unambiguously directs the agency to the

14

historical fact of an alien's conviction.   As McNeill recognized, use of the present tense is not dispositive if the statute requires an evaluation of a past conviction. 563 U.S. at 820.   The INA, like the ACCA, is "concerned with convictions that have already occurred," and the "only way" to assess whether a past conviction makes an alien removable "is to consult the law that applied at the time of that conviction."   Id. ("[T]he maximum sentence that 'is prescribed by law' for that offense must . . . be determined according to the law applicable at that time."). McNeill thus stands for the principle that, as a matter of the "plain meaning" of a statute, when "Congress use[s] the present tense to refer to past convictions," there is no reason to "look anywhere other than the law under which the defendants were actually convicted to determine the elements of their offenses." Id. at 821–22.

This Court has also recognized that provisions of the INA in which "Congress has expressly required an alien to have been convicted of an offense for specific consequences to attach" indicate that "Congress intends legal consequences to attach . . . at the time of adjudication of a crime."   Centurion v. Sessions, 860 F.3d 69, 76 (2d Cir. 2017).   This is in contrast to other provisions of the INA that focus on the time of commission of the offense, see id., and (as the

15

BIA recognized) *still other* provisions of the INA that attach consequences to an alien's individual criminal history, including subsequent state-court modifications to that history, see Matter of Velasquez-Rios, 27 I. & N. Dec. at 474 & n.9.

Looking to the criminal law at the time of conviction has the undoubted benefit of attaching immigration consequences to the alien's actual conduct and culpability at the time it occurs. Moreover, it is hard to control the ramifications of looking backward. If one does that, there would be no principled basis for disregarding amendments that *stiffen* penalties, so that aliens could become removable retroactively. That is not fanciful. There is no ex post facto concern from an immigration perspective because there is a "long and unwavering line of authority . . . 'establishing that statutes retroactively setting criteria for deportation do *not* violate the ex post facto clause.'" Morris v. Holder, 676 F.3d 309, 316–17 (2d Cir. 2012) (quoting Domond v. INS, 244 F.3d 81, 87 (2d Cir. 2001)). Retroactive application of state sentencing law to federal immigration proceedings is a principle with absurd ramifications.[5] Were Section 237 to allow

---

[5] Another such absurdity, as the Ninth Circuit recognized, is that an interpretation of Section 237 that depended on criminal law at the time of the

16

for such a result, no alien could foresee, and no judge or defense counsel could confidently advise of, the future immigration consequences of a criminal conviction or plea.   See Doe v. Sessions, 886 F.3d 203, 210 (2d Cir. 2018) ("[A] 'time-of-conviction' rule provides both the Government and the alien with maximum clarity at the point at which it is most critical for an alien to assess . . . whether 'pending criminal charges may carry a risk of adverse immigration consequences.'" (quoting Padilla v. Kentucky, 559 U.S. 356, 369 (2010)); see also United States v. Gonzalez, 884 F.3d 457, 461 (2d Cir. 2018) (requiring "'strict adherence'" to a trial court's duty to explain possible immigration consequences to a defendant (quoting United States v. Pattee, 820 F.3d 496, 503 (2d Cir. 2016)).

This interpretation comports with the BIA's determination that the removal statute does not bend to a state's retroactive expunction of a criminal record unless the nature of the expunction calls into doubt whether the alien is

---

removal proceedings would mean that "two aliens who had 'identical criminal histories—down to the dates on which they committed and were sentenced for their prior offenses'—could receive different treatment under the . . . removal statute solely because one alien's immigration hearing 'happened to occur after the state's legislature amended the punishment for one of the shared prior offenses.'"   Velasquez-Rios, 988 F.3d at 1087 (quoting McNeill, 563 U.S. at 823).

indeed guilty of criminal conduct. See Saleh v. Gonzales, 495 F.3d 17, 24–25 (2d Cir. 2007). For purposes of federal immigration law, a conviction remains as a predicate for removal notwithstanding any retroactive state court relief that is given for rehabilitative purposes, or to avoid such collateral consequences as deportation. See Matter of Thomas, 27 I. & N. Dec. 674, 675 (2019) ("[A]ny change in a state sentence . . . . will have legal effect for immigration purposes when based on a procedural or substantive defect in the underlying criminal proceeding, but not when the change was based on reasons unrelated to the merits, such as the alien's rehabilitation or an interest in avoiding an immigration consequence.").

In Saleh, this Court deferred to the BIA's interpretation of the INA on this point, recognizing that "[w]hen a conviction is amended nunc pro tunc solely to enable a defendant to avoid immigration consequences, in contrast to an amendment or vacatur on the merits, there is no reason to conclude that the alien is any less suitable for removal."[6] 495 F.3d at 24–25. We have consistently

---

[6] As Saleh acknowledged, it is ambiguous how Congress intended the phrase "is convicted of a crime involving moral turpitude" in Section 237 to operate with respect to aliens whose convictions had been vacated and who were, therefore, perhaps no longer "convicted" at all. 495 F.3d at 22 ("Congress may have

upheld the application of the rule in <u>Saleh</u> to state actions that modify criminal sentences. <u>See, e.g.</u>, <u>Sutherland v. Holder</u>, 769 F.3d 144, 146–47 (2d Cir. 2014) (per curiam) ("Sutherland sought and obtained vacatur of her conviction solely for rehabilitative reasons and to avoid adverse immigration consequences, and so her conviction remains valid for purposes of establishing removability."); <u>Veiro v. Mukasey</u>, 293 F. App'x 787, 788–89 (2d Cir. 2008) (summary order) (refusing to give effect to a state court vacatur of a conviction based on "the adverse immigration consequences of the conviction, rather than reasons related to guilt or procedural flaws"). We have even affirmed the application of this rule when the underlying state offense was decriminalized. <u>See</u> <u>Taylor v. Sessions</u>, 714 F. App'x 85, 86–87 (2d Cir. 2018) (summary order) ("The Connecticut legislature's decision that . . . possession of marijuana should no

---

intended that where an alien receives any type of post-conviction relief . . . the immigration law should treat the conviction as if it never occurred . . . . On the other end of the spectrum, Congress may have intended that no post-conviction relief whatsoever should have any effect on whether an alien stands 'convicted' of a removable offense . . . ."). That ambiguity is not presented here; regardless of when vacatur may result in immigration relief for previously convicted aliens, the INA unambiguously refers to the law applicable at the time of the predicate conviction, and not to any subsequent law.

longer carry the penalties it once did does not render an otherwise valid past conviction procedurally or substantively defective."). Although these cases have arisen in the context of vacatur or expunction rather than, as here, operation of a state statute, the same principle applies; such measures may have retroactive effect under state law, but in the eyes of federal immigration law they do not undo the alien's commission of a serious offense establishing removability under the INA.

And the rule is consistent with the general approach to retroactivity in the immigration laws. In <u>Doe v. Sessions</u>, for example, this Court determined that an alien remained removable for a narcotics offense even though the drug schedule under the Controlled Substances Act at the time of his conviction was broader than the schedule at the time of his removal proceeding. 886 F.3d at 209–10. As we observed, the "INA provisions authorizing the Attorney General to remove aliens convicted of serious offenses after admission focus not on the timing of removal proceedings but, instead, on the conviction itself." <u>Id.</u> at 209 n.5. The law that determines whether an alien is deportable is therefore the law "in effect at the time of conviction." <u>Id.</u> at 210. Subsequent changes to the law do not affect whether the alien stands convicted of a deportable offense within

20

the meaning of federal immigration laws.   See id. at 210 n.6 (holding that despite a modification of the drug schedules since the petitioner's conviction, "the statutory law ha[d] not changed" because at "both the time of Doe's conviction and the time of his removal proceedings, the statutory law authorized his removal because Doe remained '*convicted*' of an aggravated felony or controlled substances offense 'after admission'").

This interpretation finds support in legislative history.   As Congress made clear in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the federal removal statute is not concerned with post-hoc revisions of convictions or reassessments of individual culpability.[7]   That Act modified the INA to "broaden[] the scope of the definition of 'conviction'" in order to counteract the "myriad . . . provisions for ameliorating the effects of a conviction" used "in the various States."   H.R. Conf. Rep. 104-828, at 223–24 (1996).   Congress took note that these state procedures had the impermissible

---

[7] The only post-conviction relief Section 237(a)(2)(A) explicitly contemplates is waiver based on a presidential or gubernatorial pardon.   See 8 U.S.C. § 1227(a)(2)(A)(vi).   And even then, not every pardoned alien is shielded from removal: unregistered sex offenders remain deportable.   Id.

21

effect of allowing aliens "who have clearly been guilty of criminal behavior and whom Congress intended to be considered 'convicted'" to "escape[] the immigration consequences normally attendant upon a conviction."  Id.

To that end, Congress defined a conviction as "a formal judgment of guilt of the alien *entered by a court*" and provided that "[a]ny reference to a . . . sentence with respect to an offense is deemed to include the period of incarceration or confinement *ordered by a court of law* regardless of any suspension of the imposition or execution of that . . . sentence in whole or in part."  8 U.S.C. § 1101(a)(48) (emphasis added).

These amendments to the INA emphasize that deportability depends on the historical fact of conviction *at the time it was ordered by a court*, regardless of what ameliorative relief a state may grant; it is "the original finding or confession of guilt [that] is sufficient to establish a 'conviction' for purposes of the immigration laws."  H.R. Conf. Rep. 104-828, at 224; see also Saleh, 495 F.3d at 24 (stating that "focus[ing] on the original attachment of guilt" is "consistent with Congress' intent in enacting the 1996 amendments"); Matter of Thomas, 27 I. & N. Dec. at 682 ("Congress made clear that immigration consequences should flow from the original determination of guilt.").  When a state court first found

22

Peguero Vasquez guilty, he became deportable.   Deportable he remains.

## C

Peguero Vasquez also argues that this interpretation of Section 237 must be error because it conflicts with principles of federalism.   In his view, "Congress preserved states' police power over criminal law in the immigration context by deferring to states' definitions of their own convictions and sentences" in the INA.   Petitioner Br. at 26.   He argues that the BIA's interpretation of Section 237 impermissibly encroaches on New York's police powers by preventing the state from controlling the immigration consequences of prior state law convictions.

The INA's incorporation of state law does not have so great a reach or effect.   Federal immigration law uses state law as a proxy insofar as a state law offense may be the CIMT that provides the basis for an alien's deportability. This is because, "from a practical perspective, . . . state convictions are a useful way for the federal government to identify individuals who, because of their criminal history, may be appropriate for removal."   Saleh, 495 F.3d at 24.   But this does not command deference to state law when it comes to determining whether a state law conviction makes an alien deportable, because there "will

23

still remain individuals who are guilty of 'morally turpitudinous' conduct, and therefore suitable for removal even though they do not have a still-standing conviction for a removable offense under state law."   Id. (citation omitted). Whether or not "one has been 'convicted' within the language of [federal] statutes is necessarily . . . a question of federal, not state law, despite the fact that the predicate offense and its punishment are defined by the laws of the State." United States v. Campbell, 167 F.3d 94, 97 (2d Cir. 1999) (quotation marks omitted) (alterations in original).

This conclusion does not conflict with federalism principles; it flows from them.   "[T]he removal process is entrusted to the discretion of the Federal Government," Arizona v. United States, 567 U.S. 387, 409 (2012), and "in the realm of immigration policy, it is the federal government that maintains broad and preeminent power, which is codified in an extensive and complex statutory scheme."   New York v. Dep't of Just., 951 F.3d 84, 90–91 (2d Cir. 2020) (quotation marks omitted).   New York certainly has the authority to amend its criminal law as it sees fit; nothing about the INA conflicts with a retroactive

24

modification to state sentences for purposes of *state law*.[8]   New York may release every misdemeanant one day early if it chooses.   And, assuming Congress does not elect to amend the INA in response to New York's modification to its sentencing scheme, it seems that aliens convicted of Class A misdemeanors going forward will avoid federal removal proceedings.[9]   But, if we accepted the petitioner's view, the retroactive amendment would influence the workings of federal immigration proceedings now.

Like the Ninth Circuit, we "decline to give retroactive effect to the [state] statute in the . . . removal context where it appears that the purpose of that state law amendment is to circumvent federal law."   Velasquez-Rios, 988 F.3d at 1087. The objective of Section 70.15 was to eliminate what its sponsor considered "arbitrary," "[u]nnecessary deportations" and "unduly harsh immigration

---

[8] We reject the arguments offered by amicus curiae Immigrant Defense Project asserting that the BIA has impermissibly preempted state law.   See Brief of Immigrant Defense Project as Amicus Curiae in Support of Petitioner at 3–23. Nothing in the INA or the BIA's order in this case inhibits the functioning of New York Penal Law Section 70.15 for purposes of state law.

[9] This begs the question whether, as a matter of federal immigration law, 364 days is functionally the same as a year if the single day is abated for the purpose of frustrating federal law.

consequences" for aliens who have committed misdemeanors. N.Y. State Assembly Memorandum in Support of Legislation, Bill No. A05964 (2019). But whatever "understandable frustrations" a state may have with immigration policy, it "may not pursue policies that undermine federal law." New York, 951 F.3d at 91 (quoting Arizona, 567 U.S. at 416).

\* \* \*

We therefore join the Ninth Circuit in holding that the BIA correctly concluded that a state's retroactive reduction to the maximum possible sentence for Class A misdemeanors has no effect for purposes of Section 237 of the INA.[10]

**IV**

Peguero Vasquez separately argues that the CIMT ground for removal under Section 237 violates due process because it is unconstitutionally vague. The void for vagueness doctrine "provides that a conviction is invalid under the

---

[10] Peguero Vasquez argues that we must interpret Section 237 in his favor under the rule of lenity because the statute has both civil and criminal applications. The rule of lenity has no application in this case because, as we have explained, Section 237 unambiguously refers to the law at the time of the alien's conviction. See, e.g., United States v. Thompson/Center Arms Co., 504 U.S. 505, 517 (1992) (turning to the rule of lenity only "[a]fter applying the ordinary rules of statutory construction" and finding "an ambiguous statute").

26

Due Process Clause if the statute . . . fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." Rubin v. Garvin, 544 F.3d 461, 467 (2d Cir. 2008) (quotation marks and citation omitted). It applies equally in the immigration context. See Sessions v. Dimaya, 138 S. Ct. 1204, 1213 (2018). Absent First Amendment concerns, we assess vagueness challenges to a statute as applied, rather than facially. United States v. Farhane, 634 F.3d 127, 137–39 (2d Cir. 2011).

Peguero Vasquez acknowledges that his argument is contrary to Supreme Court precedent. The Supreme Court rejected his vagueness challenge seventy years ago in Jordan v. De George, holding that "[w]hatever else the phrase 'crime involving moral turpitude' may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude." 341 U.S. at 232. Peguero Vasquez does not deny that the state law conviction on which the agency premised his removal includes "fraud [as] an ingredient." Id. It criminalizes uttering or possessing a forged instrument "with knowledge that it is forged and with intent to defraud, deceive or injure another." N.Y. PENAL LAW § 170.20; see also

27

Certified Admin. Record at 659.   Instead, Peguero Vasquez asserts that Jordan

has been implicitly overruled by Dimaya and Johnson v. United States, 576 U.S.

591 (2015).

But we remain bound.[11]   And recognizing that Peguero Vasquez's prior

conviction includes an element of fraudulent intent, we join our sister circuits in

holding that the term "crime involving moral turpitude" is not

unconstitutionally vague.   See, e.g., Zaragoza v. Garland, 52 F.4th 1006, 1012–13

(7th Cir. 2022); Daye v. U.S. Att'y Gen., 38 F.4th 1355, 1364 (11th Cir. 2022);

Martinez-de Ryan v. Whitaker, 909 F.3d 247, 251–52 (9th Cir. 2018), cert. denied,

---

[11] This Court lacks authority to disregard binding authority from the Supreme
Court on the theory that it has been possibly overruled.   "If a precedent of th[e
Supreme] Court has direct application in a case, yet appears to rest on reasons
rejected in some other line of decisions, the Court of Appeals should follow the
case which directly controls, leaving to th[e Supreme] Court the prerogative of
overruling its own decisions."   Rodriguez de Quijas v. Shearson/Am. Exp. Inc.,
490 U.S. 477, 484 (1999).

Peguero Vasquez's argument is not even consistent with the Supreme Court
cases he cites; Dimaya specifically relied on Jordan's application of the void-for-
vagueness doctrine in the immigration context.   Dimaya, 138 S. Ct. at 1213
("Nothing in the ensuing years calls [Jordan's] reasoning into question.").
Although Dimaya decided a different question, it is difficult to see how the
Supreme Court could rely on Jordan and implicitly overrule it at the same time.

140 S. Ct. 134 (2019); <u>Moreno v. Att'y Gen.</u>, 887 F.3d 160, 165–66 (3d Cir. 2018);

<u>Boggala v. Sessions</u>, 866 F.3d 563, 569–70 (4th Cir. 2017), <u>cert. denied</u>, 138 S. Ct.

1296 (2018); <u>Dominquez-Pulido v. Lynch</u>, 821 F.3d 837, 842–43 (7th Cir. 2016).

*    *    *

For these reasons we **DENY** Peguero Vasquez's petition for review.

BETH ROBINSON, Circuit Judge, dissenting:

I agree with the majority that Section 237(a)(2)(A)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(i), is "backward-looking." Majority Op. at 14. What matters is the maximum possible sentence for Peguero Vasquez's crime under "the version of state law that [he] was actually convicted of violating." *McNeill v. United States*, 563 U.S. 816, 821 (2011) (discussing *Taylor v. United States*, 495 U.S. 575 (1990)). We look to New York law to answer that question, and New York law tells us that the maximum sentence was 364 days. *See* New York Penal Law (NYPL) § 70.15 (1-a). Because Peguero Vasquez was not convicted of a crime involving moral turpitude ("CIMT") for which a sentence of one year or longer may be imposed, I would grant his petition for review. Accordingly, I respectfully dissent.

My conclusion flows from the text of Section 237(a)(2)(A)(i)(II), which unambiguously relies on a state's sentencing laws to determine the maximum sentence available following a particular conviction, and NYPL § 70.15 (1-a), which establishes a maximum penalty of 364 days' imprisonment for Peguero Vasquez's 2017 offense. It is entirely consistent with the Supreme Court's guidance in *McNeill*—a decision that looms large in the Board of Immigration Appeals' (BIA) and the majority's analyses. Even if Section 237(a)(2)(A)(i)(II) was ambiguous—

1

and I do not think it is—the BIA's interpretation of the statute does not merit deference as it rests on a flawed assessment of the case law and fails to grapple with the distinction between an effort to leverage a *prospective* amendment to state law to alter the effect of a *past* conviction and a state law that retroactively establishes the available sentencing range *for that past conviction*. The majority's invocation of *other* contexts in which the INA fails to give effect to post-conviction events is unpersuasive because it draws broad conclusions about the INA's general approach to state laws and judgments with retroactive effect from decisions that are grounded, as they should be, in the language of particular statutory sections. And its suggestion that the BIA can decline to fully apply New York law because the New York legislature sought to impact the immigration consequences of state court convictions has no grounding in the statute governing Peguero Vasquez's removability. I elaborate below.

## I. Section 237(a)(2)(A)(i)(II) and NYPL § 70.15 (1-a)

The answer to the central question in this case turns on the text of Section 237(a)(2)(A)(i)(II) and the operation of NYPL § 70.15 (1-a). Together, these statutes establish that Peguero Vasquez is not removable pursuant to Section

2

237(a)(2)(A)(i).  The retroactive nature of NYPL § 70.15 (1-a) does not change the analysis.

Under Section 237(a)(2)(A)(i), a noncitizen is removable if, within five (or in some cases ten) years of admission, the noncitizen is convicted of a CIMT *for which a sentence of one year or longer may be imposed.*  If a noncitizen has been convicted of a CIMT within the statutory time window, whether the crime was subject to a sentence of one year or longer is determined with reference to state law at the time of the conviction.  *Cf. United States v. Rodriquez,* 553 U.S. 377, 387 (2008) (holding in Armed Career Criminal Act ("ACCA") sentence-enhancement case that "the maximum penalty prescribed by law for a state offense necessarily depends on state law.") (internal quotations omitted).

In 2017, Peguero Vasquez was convicted under NYPL § 170.20.  Pursuant to NYPL § 70.15 (1-a), the maximum sentence available for a conviction under NYPL § 170.20 is and *has always been* 364 days.  NYPL § 70.15 (1-a) establishes the maximum sentence for Peguero Vasquez's 2017 conviction was 364 days.  NYPL § 70.15 (1-a) retroactively overrides any prior statutory maximum for the 2017 conviction and renders it a legal nullity.  Given the express terms of NYPL § 70.15 (1-a), the majority's assertion that under the law in effect in 2017 Peguero Vasquez

was subject to a penalty of one year's imprisonment for violating NYPL § 170.20 is legally incorrect. That's how retroactive, or "*nunc pro tunc*" statutes and orders work. They establish the applicable law at a *past* time, legally erasing any prior understanding of the law in effect at that time. The BIA essentially, and without any statutory authorization, declined to give effect to this retroactive aspect of New York law and instead identified a maximum sentence for Peguero Vasquez's 2017 conviction that has no basis in New York law. *See Santana v. Barr*, 975 F.3d 195, 198 (2d Cir. 2020) (noting that we do not defer to the BIA's interpretation of state laws).

Although NYPL § 70.15 (1-a) creates a time-traveling legal fiction of sorts, such legal fictions are not new to this Court. *See, e.g.*, *Yale-New Haven Hosp. v. Nicholls*, 788 F.3d 79, 86 (2d Cir. 2015) (upholding validity of *nunc pro tunc* Qualified Domestic Relations Orders entered after the death of the plan participant). Nor is such time-travel new for the BIA. *See, e.g.*, *Blake v. Carbone*, 489 F.3d 88, 94 (2d Cir. 2007) (noting that BIA had allowed certain lawful permanent residents to seek a specific statutory waiver *nunc pro tunc* for over sixty years) (citing *Edwards v. I.N.S.*, 393 F.3d 299, 308 (2d Cir. 2004) (explaining that "[t]he equitable remedy of *nunc pro tunc* (literally 'now for then') relief has a long and

4

distinguished history in the field of immigration law") (citing BIA decisions)).

Courts routinely give effect to the legal fiction created by retroactive statutes and orders.

And nothing in the text of Section 237(a)(2)(A)(i)(II) suggests an exception to the general principle that state law establishes the maximum sentence available for conviction of a state crime when that maximum sentence is enacted pursuant to a retroactive rather than prospective statute.

The majority cites *Doe v. Sessions* as support for its position that because "this Court determined that a[] [noncitizen] remained removable for a narcotics offense even though the drug schedule under the Controlled Substances Act at the time of his conviction was broader than the schedule at the time of his removal proceeding." Majority Op. at 20. *Doe* is inapposite. The change in the statute at issue in *Doe* did not have retroactive reach. The majority ignores this key fact.

Section 237(a)(2)(A)(i)(II) unambiguously ties a noncitizen's removability to a state's sentencing laws, with no exception for laws establishing the maximum sentence for a past crime through retroactive effect. Thus, Peguero Vasquez's conviction under NYPL § 170.20 does not render him removable under Section 237(a)(2)(A)(i).

## II.    *McNeill*

Nothing in *McNeill* undermines this analysis.

In *McNeill*, the Supreme Court answered the following question: in determining the maximum sentence for a prior state drug conviction for ACCA purposes, should the court look to the maximum sentence available at the time of the defendant's *conviction* or at the time of *sentencing*?  *See McNeill*, 563 U.S. at 817. Despite the use of present-tense language in the applicable ACCA provision, the Court conducted a "backward-looking" assessment and consulted "the version of state law that [the defendant] was convicted of violating."  *Id.* at 820-21.  The Court noted that its interpretation fit with its approach to an adjacent section of the same statute: in determining whether a defendant was convicted of a "violent felony," the Court relied on "the version of state law that the defendant was actually convicted of violating."  *Id.* at 821.  The lesson of *McNeill* is that the maximum sentence for *a defendant's particular crime of conviction* is what governs for purposes of considering ACCA enhancements, not the maximum sentence for a hypothetical later conviction for the same offense.

Based on this authority, the majority rightly rejects Peguero Vasquez's argument that the reference to crimes "for which a sentence of one year or longer

6

may be imposed," Section 237(a)(2)(A)(i)(II), requires "a present-facing inquiry into what possible sentence may attach to a [noncitizen's] conviction at the time of the removal proceedings." Majority Op. at 14. Thus phrased, in light of *McNeill*, Peguero Vasquez's argument proves too much.

But the *McNeill* Court expressly noted that its analysis *did not* purport to address the impact of retroactive changes to the maximum penalty *applicable to a past offense*. The Court wrote:

> As the Government notes, this case does not concern a situation in which a State subsequently lowers the maximum penalty applicable to an offense and makes that reduction available to defendants previously convicted and sentenced for that offense. We do not address whether or under what circumstances a federal court could consider the effect of that state action.

*McNeill*, 563 U.S. at 825 n.1 (internal citations omitted).[1] In so noting, the Court implicitly recognized the distinction between an amendment to state law that prospectively increases the maximum sentence for a particular crime but does not impact past convictions, and one that by its terms establishes the maximum penalty for *past* convictions. The former has no impact on the maximum penalty

---

[1] *See also Rivera v. United States*, 716 F.3d 685, 688 (2d Cir. 2013) (concluding that changes to New York sentencing laws were essentially prospective such that the statutory amendments were not excepted from the *McNeill* holding by virtue of footnote 1).

in effect at the time of a defendant's (past) conviction, whereas the latter establishes that penalty as a matter of state law.

By its own terms, *McNeill* does not purport to answer the question presented in *this* case, and the majority's reliance on *McNeill* is misplaced. And insofar as the Court in *McNeill* held that courts should consider "the version of state law that [the defendant] was actually convicted of violating," *id.* at 820 (internal quotations omitted), the Court's reasoning supports the conclusion that under Section 237(a)(2)(A)(i)(II) we should look to the maximum possible sentence *for Peguero Vasquez's 2017 conviction*—in this case, 364 days. NYPL § 70.15 (1-a).

## III. The BIA's Contrary Analysis Does Not Warrant Deference

Even if Section 237(a)(2)(A)(i)(II) was ambiguous—which it isn't in my view—the BIA's interpretation of the statute merits no deference because it relies on a misapplication of *McNeill* and on a Ninth Circuit decision, *United States v. Diaz*, 838 F.3d 968 (9th Cir. 2016), that is inapposite.

In adjudicating Peguero Vasquez's appeal, the BIA relied on its interpretation of Section 237(a)(2)(A)(i)(II) as announced in *Matter of Velasquez-Rios*, 27 I. & N. Dec. 470 (BIA 2018). Thus, if Section 237(a)(2)(A)(i)(II) is ambiguous, we would defer to the BIA's interpretation in *Velasquez-Rios* unless its

8

reading of the statute is unreasonable.  *See Mei Juan Zheng v. Holder*, 672 F.3d 178, 184 (2d Cir. 2012).[2]

In *Velasquez-Rios*, the BIA analyzed the impact of Section 18.5 of the California Penal Code ("Section 18.5") on Section 237(a)(2)(A)(i) of the INA.  *Matter of Velasquez-Rios*, 27 I. & N. Dec. at 472.  Section 18.5, which applies retroactively, provides that an offense punishable by imprisonment "up to or not exceeding one year" shall be punishable by imprisonment "for a period *not to exceed 364 days*."  *Id.* at 471 (emphasis in original).  The BIA concluded that although Section 18.5 may have retroactively modified the maximum possible sentence for the respondent's past forgery offense for purposes of California state law, it did not affect the immigration consequences of Velasquez-Rios's conviction for purposes of Section 237(a)(2)(A)(i).  *Id*. at 472.  In reaching this conclusion, the BIA relied heavily on *McNeill* and *United States v. Diaz*, 838 F.3d 968 (9th Cir. 2016), without acknowledging or addressing key distinctions between those cases and *Velasquez-Rios*.

---

[2] The BIA's decision in Peguero Vasquez's case was unpublished.  Its ruling in *Valesquez-Rios* was published.  27 I. & N. Dec. 470.  "[W]here, as in this case, the challenged unpublished decision relies on a binding published decision, *Chevron* deference will extend to that earlier decision's reasonable resolution of statutory ambiguity."  *Mizrahi v. Gonzales*, 492 F.3d 156, 158 (2d Cir. 2007).

With respect to *McNeill,* the BIA summarized the Supreme Court's holding

as follows:

> The Court explained that the plain language of § 924(e)(2)(A)(ii) requires a Federal sentencing court to determine "the maximum sentence applicable to a defendant's previous drug offense *at the time of his conviction for that offense. . . .* The only way to answer this backward-looking question is to consult the law that applied *at the time of that conviction.*" The Court concluded that this "natural reading of [§ 924(e)(2)(A)(ii)] . . . avoids the absurd results that would follow from consulting current state law to define a previous offense."

*Matter of Velasquez-Rios*, 27 I. & N. Dec. at 474 (emphasis in original) (quoting

*McNeill*, 563 U.S. at 820, 822).

Although the BIA acknowledged in a footnote that the Supreme Court

expressly declined to address the effect of a retroactive change in a state sentencing

law, it offered no explanation, in light of the Supreme Court's express reservation

of the issue, as to how or why *McNeill* supported its conclusion in the *Velasquez-*

*Rios* case. *Matter of Velasquez-Rios*, 27 I. & N. Dec. at 474 n. 8. Nor did it deal with

the distinct issues posed by a state sentencing law establishing a retroactively

effective maximum sentence for a *past* conviction.

The BIA's reliance on *United States v. Diaz* is similarly flawed. In *Diaz*, on

collateral review, the Ninth Circuit considered the impact on a defendant's

sentence, which was enhanced pursuant to 21 U.S.C. § 841 on account of two prior

10

felony convictions in California, of the subsequent retroactive reclassification of one of his prior felony convictions. *Diaz*, 838 F.3d at 971–72. The Ninth Circuit cited various decisions supporting the proposition that § 841, like the sentence enhancement in the ACCA at issue in *McNeil*, calls for a backward-looking assessment of state law convictions. *Id*. at 973–974. With respect to the *retroactive* nature of the reclassification at issue in *Diaz*, the Ninth Circuit relied on two considerations in concluding that the reclassification would not affect the applicability of the enhancement to Diaz's federal sentence.

First, the court noted that given the language and structure of the California statute at issue, "it is not clear that even California would apply Proposition 47 retroactively in a sentence enhancement case such as ours." *Id*. at 974. There is no similar lack of clarity as to the significance of the New York statute, NYPL § 70.15 (1-a), in this case.

Second, the Ninth Circuit focused on the specific language of the applicable federal sentence enhancement at issue, 21 U.S.C. § 841(b)(1)(A). *Id*. at 975. That section provides:

> If any person commits a violation of this subparagraph . . . after 2 or more prior convictions for a serious drug felony or serious violent felony have become final, such person shall be sentenced to a term of

imprisonment of not less than 25 years and fined in accordance with the preceding sentence.

21 U.S.C. § 841(b)(1)(A). The court relied heavily on the statutory requirement that the convictions "have become final." *Diaz*, 838 F.3d at 975. It concluded "California's later actions cannot change the fact that Peguero Vasquez committed his federal offense after two or more convictions for a felony drug offense had become final." *Id*. (internal quotations omitted).

The BIA did not in *Matter of Velasquez-Rios* engage in any similarly focused or nuanced analysis of the language of the statute at issue in that—and this—case. If it had, it would not have found specific language tying the federal immigration consequences of a state conviction to the time that conviction became "final." Instead, that statute provides certain immigration consequences for noncitizens convicted of a crime involving moral turpitude "for which a sentence of one year or longer may be imposed." 8 U.S.C. § 1227(2)(A)(i)(II). This language does not support the kind of parsing the Ninth Circuit conducted to support its conclusion in *Diaz*.

The majority cites the BIA's reasoning with approval, but because the BIA failed to reckon with the critical distinctions between *Velasquez-Rios* and the two

12

decisions it relied upon, its conclusion, which rests heavily on those cases, is unreasonable and warrants no deference. *Mei Juan Zheng*, 672 F.3d at 184.

## IV. Retroactivity in Other Contexts

The majority's reliance on the BIA's interpretation of the INA with respect to the effect of a state's retroactive expunction of a criminal record is unpersuasive. The INA does not establish a single, universal rule regarding the effect of state actions that retroactively impact a state law conviction, and this case is readily distinguishable from the cases on which the majority relies.

Under the INA, the effect on a noncitizen's removability resulting from a state law action with retroactive effect turns on the specific language of the federal statute in question, and the specific nature of the state law action in question. In some cases, state actions that retroactively impact a noncitizen's conviction can vitiate the noncitizen's removability; in other cases, they cannot. For example, a full gubernatorial or presidential pardon can effectively eliminate the effect of many convictions on a noncitizen's removability. 8 U.S.C. § 1227(a)(2)(A)(vi). But such a pardon does not negate the removability of a noncitizen convicted of failing to register as a sex offender. *Id*. At the end of the day, our analysis of the impact on removability of retroactively effective state laws turns on the language of the

13

statutes in question, and not a universal policy for or against giving effect to state laws that by their own terms have retroactive impact on state law convictions.

With that in mind, this case is readily distinguishable from the cases relied upon by the majority in which a removable noncitizen secures expungement or other post-conviction changes to an individual state law conviction for the sole purpose of preventing removal.

For example, in *Saleh v. Gonzales*, 495 F.3d 17 (2d Cir. 2007), this Court considered whether Saleh was removable pursuant to Section 237(a)(2)(A)(i) after he successfully petitioned the California court to change his original conviction for receiving stolen property to a non-qualifying crime for the sole purpose of avoiding adverse immigration consequences, and not because of any procedural or substantive defect in the original conviction. *Saleh*, 495 F.3d at 20. The critical question was how to interpret the term "convicted" in the federal statute, where "conviction" was defined as "a formal judgment of guilt of the [noncitizen] entered by the court." *Id*. at 22. Recognizing that the term "conviction" in the federal statute could be reasonably interpreted in a number of ways, this Court deferred to the BIA's reasonable interpretation that convictions vacated on the merits fall outside the definition of "convictions," and convictions vacated for other reasons,

14

such as to avoid immigration hardships, qualify as "convictions." *Id.* at 23. In determining that the BIA's interpretation was reasonable, this Court considered Congress's progressive broadening of the definition of "conviction" as well as the policies underlying the removal statutes. *Id.* at 23–25.

Here, the state statute in question, NYPL § 70.15 (1-a), is not narrowly focused on individuals facing removal; it is an across-the-board statute applicable to *all* individuals convicted of certain crimes in New York, without regard to their immigration status. As noted above, it reflects a general sentencing policy judgment of the New York Legislature as to the severity of a class of crimes, not an effort to provide relief from removal for any particular individual. In that regard, it is completely different from a judicial action in a particular case calculated to avoid a specific immigration-related consequence for a specific person.

Moreover, at the foundation of this Court's analysis in *Saleh* was the ambiguity of the term "conviction" in the federal statute. There is no such ambiguity in the concept of "a sentence of one year or longer." 8 U.S.C. §

1227(a)(2)(A)(i)(II). For these reasons, the majority's invocation of *Saleh* and similar cases is unpersuasive.[3]

## V. Impact on Administration of INA

The majority's suggestion that we should ignore NYPL § 70.15 (1-a) because the New York legislature is attempting to undermine federal immigration law similarly misses the mark. Congress chose to rely on state sentencing law to establish a critical element of removability under Section 237(a)(2)(A)(i); it did not create any exception based on the motives imputed to a state legislature.

Congress *could have* created an independent federal framework for determining what criminal convictions render a noncitizen removable, rendering state laws irrelevant to the analysis. But it didn't. Congress could have created a framework that relied on state law maximum penalties with an exception in Section 237(a)(2)(A)(i)(II) for certain kinds of state sentencing laws—such as state

---

[3] The majority's argument that giving full effect to NYPL § 70.15 (1-a) under Section 237(a)(2)(A)(i) would lead to absurd results because judges and defense lawyers could not predict the immigration consequences of a criminal conviction or plea doesn't make sense. For one, the argument implausibly assumes that a state could pass a law retroactively *increasing* the maximum sentence for past crimes. *See* U.S. Const. art. I, § 10 ("No State shall . . . pass any . . . ex post facto law"); *Peugh v. U.S.*, 569 U.S. 530, 538 (2013) (explaining that "*ex post facto"* laws include laws that "change[] the punishment, and inflict[] a greater punishment, than the law annexed to the crime, when committed.") (internal quotations omitted). Second, it ignores the fact that because, as the majority notes, Congress can retroactively set criteria for removal, *see* Majority Opinion at 16 (citing *Morris v. Holder*, 676 F.3d 309, 316–17 (2d Cir. 2012)), judges and defense lawyers already cannot confidently predict the immigration consequences of a criminal conviction *wholly apart* from the context of retroactive statutes like NYPL § 70.15 (1-a).

laws with express retroactive effect. But it didn't. Instead, it passed a statute that ties noncitizens' removability to the considered judgments of the various state legislatures in setting the maximum available sentences for various state law crimes. As the United States Supreme Court explained in a related context:

> Congress chose to rely on the "maximum term of imprisonment . . . prescribed" by state law as the measure of the seriousness of state offenses involving the manufacture, distribution, or possession of illegal drugs. Congress presumably thought—not without reason—that if state lawmakers provide that a crime is punishable by 10 years' imprisonment, the lawmakers must regard the crime as "serious," and Congress chose to defer to the state lawmakers' judgment.

*See Rodriquez*, 553 U.S. at 388 (discussing analogous language in ACCA).

Congress's approach leads to some incongruities. Individuals convicted of certain offenses in New York may not be subject to the same maximum sentences as individuals convicted of comparable offenses in another state, and thus may face different consequences with respect to their removability. *See Moncrieffe v. Holder*, 569 U.S. 184, 205 n.11 (2013) (explaining that immigration enforcement disparities will inevitably arise when based on state criminal law definitions because states may differ in how they define and regulate criminal offenses). But for purposes of Section 237(a)(2)(A)(i)(II), there is no federally unacceptable maximum sentence for any particular state law conviction; the maximum penalty

for a particular CIMT for the purposes of Section 237(a)(2)(A)(i)(II) is whatever the state of conviction has enacted.

And a state legislature's motives in setting generally applicable maximum sentences are irrelevant under the federal statute.  Even if the New York legislature did amend its sentencing laws in part to eliminate what it viewed as undue collateral consequences—including immigration consequences—of minor New York convictions, the majority does not and cannot suggest that the BIA should treat new violations of NYPL § 170.20 as qualifying CIMT offenses despite the 364-day maximum sentence under NYPL § 70.15 (1-a).

And had New York's legislature set 364 days as the maximum sentence for violations of NYPL § 170.20 by legislation enacted before Peguero Vasquez's conviction, the majority would not suggest that we ignore New York's maximum sentence for violations of NYPL § 170.20 because the New York legislature usurped federal authority—even if part of New York's motivation for doing so was to avoid the collateral immigration-related consequences of convicting noncitizens living in New York state of minor charges.  But by virtue of its retroactivity, NYPL § 70.15 (1-a) provides by operation of law that the 364-day maximum sentence *was* in place before Peguero Vasquez's conviction.

The question here is not whether Congress has created a statutory structure in which New York can enact laws that will substantially impact federal administration of the immigration laws. It clearly has. And there is no dispute that the BIA must generally respect New York's sentencing laws in applying Section 237(a)(2)(A)(i)(II)—regardless of whether those sentencing laws are strict or lenient, and regardless of the legislature's perceived motivations. It clearly must. The only issue here is whether one particular New York sentencing law, NYPL § 70.15 (1-a), is an exception to this general principle. It is not.

For the above reasons, I respectfully dissent.